## MARTHA ROUNTREE v. LONNIE THOMPSON.

(Filed 9 October, 1946.)

**1. Landlord and Tenant § 33—**

In an action against a tenant to recover for the loss by fire of a tobacco
barn on the premises, allegedly caused by the negligence of the tenant in
failing to place a competent person in charge of the oil heating system
and in failing to frequently visit the premises for inspection, nonsuit is
properly entered where there is no evidence of causal relation between the
fire and the negligence complained of.

**2. Negligence §§ 5, 19b (1)—**

Proximate cause is an essential element of actionable negligence, and
nonsuit is properly entered upon failure of proof that the negligence com-
plained of was the proximate cause of the injury.

**3. Negligence § 19b (2): Landlord and Tenant § 33—**

In an action by a landlord to recover for the destruction by fire of a
tobacco barn on the premises, predicated on the alleged negligence of the
tenant, the doctrine of *res ipsa loquitur* does not apply, and proof of

ownership in plaintiff and destruction of the barn by fire while in the possession of the tenant does not make out a case.

BARNHILL, J., concurring.

APPEAL by plaintiff from *Bone, J.,* at May Term, 1946, of WILSON. Affirmed.

This is an action by the plaintiff, landlord, against the defendant, tenant, to recover damages for the destruction by fire of a tobacco barn on the demised premises during the existence of the lease involved, alleged to have been proximately caused by the negligence of said defendant in (1) permitting his agent or servant to operate the oil heating system in said barn when he knew that said agent or servant was incompetent to operate said system; in (2) failure of defendant to place in charge of said barn some competent person who knew how to operate said heating system; and (3) the failure of the defendant to visit frequently the demised premises and to examine and see whether the heating system was properly operated. The defendant denied the allegations of negligence contained in the complaint. When the plaintiff had offered her evidence and rested her case the defendant moved to dismiss the action and for a judgment as of nonsuit, which motion was allowed by the court and a judgment of nonsuit entered, whereupon the plaintiff objected, preserved exception and appealed to the Supreme Court, assigning errors.

*Sharpe & Pittman for plaintiff, appellant.*
*Lucas & Rand for defendant, appellee.*

SCHENCK, J. The sole question posed in this appeal is: Did the court err in allowing the defendant's motion as in case of nonsuit, and accordingly entering judgment dismissing the action?

The plaintiff predicated her action upon allegations of negligence. The first allegation of negligence is that the defendant placed an incompetent person in charge of the barn to operate the heating system therein; and the second allegation of negligence is that the defendant failed to place in charge of the barn some competent person who knew how to operate such heating system; and the third allegation of negligence is that the defendant failed to frequently visit the premises to examine and see whether the system was being properly operated.

There is no evidence to support the third allegation of negligence. While there may be more than a scintilla of evidence that a person unfamiliar with the operation of the heating system was put in charge thereof, there is an absolute failure of proof of any causal relationship between the ignorance of the person put in charge of the barn and the origin of the fire.

The proof that the negligence alleged was the proximate cause of the damage suffered was essential to the plaintiff's alleged cause of action, and in the absence of any evidence that such alleged negligence was a proximate cause of the damage sought to be proven the plaintiff's cause of action had to fail.

It has been suggested that although the plaintiff's complaint alleges negligence, nevertheless the plaintiff had a right to rely upon the doctrine of *res ipsa loquitur,* and since the plaintiff has offered evidence to establish her ownership of the premises and that said defendant was in possession thereof and that the barn thereon was burned while in his possession, the burden was thereby placed on the defendant to explain how the loss occurred to excuse himself from liability. Such is but a method of contending that the doctrine of *res ipsa loquitur* is applicable in this case.

While the holdings in different jurisdictions are not all in accord, we are of the opinion, and so hold, that such doctrine is not applicable in this case. In 16 R. C. L., p. 747, par. 240, it is written: "According to the modern view, as regards the protection of the building on demised premises from destruction by accidental fires, the lessee is only required, in the absence of stipulations in regard thereto in the lease, to use reasonable diligence, and cannot be held liable in case the buildings are so destroyed, unless this has happened through his negligence." In 32 Am. Jur., Landlord and Tenant, par. 783, it is written: "Generally, the liability of a tenant for the destruction of a building by fire depends on negligence. The tenant is only required, in the absence of stipulations in the lease, to use reasonable diligence to protect buildings on the demised premises from destruction by fire, and is not liable for accidental damages or destruction by fire; he is liable only if the buildings are destroyed through his negligence."

The judgment of nonsuit entered by the Superior Court was correct.

Affirmed.

Barnhill, J., concurring: The sufficiency of the evidence offered to take the case to the jury is the only question presented for decision. The majority affirms the judgment of nonsuit for want of evidence of negligence. On this record, as the cause is presented here, I concur.

By the ancient common law waste was recoverable only against a guardian in chivalry, a tenant in dower, and a tenant by the curtesy. There could be no recovery against a tenant for life or for years. 4 Coke's Inst., 299. Subsequently, in favor of the owners of the inheritance, Stat. 52 Hen. III, ch. 23, known as the "Statute of Marlbridge," was enacted. This act made all fermers liable for waste for which they shall be "punished by amerciament grievously." Liability for waste was made an ordinary and general incident to all kinds of estates for life and

for years and the actual damages sustained by the reversioner were recoverable in an action of waste. 1 Washb. Real. Prop., 5th Ed., 158.

Thus the law remained until the passage of the statute of 6 Edw. I, ch. 5, known as the "Statute of Gloucester," which provides "that a man from henceforth shall have a writ of waste in the chancery against him that holdeth by law of England, or otherwise for term of life or for term of years, or a woman in dower; and he which shall be attained of waste shall lose the thing that he hath wasted and moreover shall recompense thrice so much as the waste shall be taxed at."

Under the law as it stood after the passage of the Statute of Gloucester, not only tenants by curtesy and in dower were held responsible for accidental fires at the common law, but tenants for life and years, created by the act of the parties, were also held responsible therefor as for permissive waste, under the last-named statute. 4 Kent Com., 82. Apparently the only exception to the liability of the tenant for damages to the reversion was where the damage was caused by the acts of God, or the public enemy, or the reversioner himself. 4 Coke, 536.

It was said by *Heath, J.,* in *Attersoll v. Stevens,* 1 Taunt., 198: "It is common learning that every lessee of land, whether for life or years, is liable in an action of waste to his lessor for all waste done on the land in his lease, by whomsoever it may be committed." In the same case *Chambre, J.,* said: "The situation of the tenant is extremely analogous to that of a common carrier."

"Tenant by the curtesie, tenant in dower, tenant for life, years, etc., shall answer for the waste done by a stranger, and shall take their remedy over." Lord Coke, 1 Co. Litt., 54a, 4 Kent Com., 77.

The law of waste as thus briefly outlined continued in force in England until the passage of the statute of 6 Anne (A.D. 1707), which guarded a tenant from the consequences of accidental misfortune by declaring that no suit should be had or maintained against any person in whose house or chamber any fire should accidentally begin, nor any recompense be made by such person for any damage suffered or occasioned thereby. This statute was afterwards enlarged by the statute of 14 Geo. III, ch. 78, sec. 86, passed in 1774, so as to include stables, barns, or any other buildings on the estate.

Speaking of the statute of 6 Anne, *Chancellor Kent* says: "Until this statute, tenants by the curtesy and in dower were responsible at common law for accidental fires; and tenants for life and years, created by the act of the parties, were responsible also, under the Statute of Gloucester, as for permissive waste." 4 Kent Com., 82. *Sampson v. Bagley,* 44 L. R. A., 711.

So then, now, under the common law, as it prevails in this State, there is an implied covenant on the part of the lessee (unless otherwise provided in the lease) to redeliver the possession of the demised premises

upon the expiration of the term in the same general condition in which they were at the time of the letting, ordinary wear and tear alone excepted. 16 R. C. L., 781, sec. 275; 32 Am. Jur., 684; 64 L. R. A., 649. The landlord is entitled, at the end of the term, to the identical premises which he has leased. *Baltimore & P. S. Co. v. Ministers, etc., Starr M. P. Church,* 130 Atl., 46.

The implied covenant does not, however, extend to the loss of buildings by fire, flood, tempest, or enemies which it was not in the power of the lessee to prevent, and there is no implied covenant that the lessee shall restore buildings which have been destroyed by accident without fault on his part. *Earle v. Arbogast,* 26 Atl., 923, and cited cases; 2 Tiffany, Real Prop. (3rd Ed.), 658; Anno. 84 A. L. R., 401; G. S., 42-10.

It would seem then, in the light of the history of the law, that destruction by the act of God, or by the public enemy, or by accident, or by the act of the lessor, are exculpatory exceptions to the general rule of liability.

If this be true, it would not be just to permit the tenant to return the premises in a damaged condition and escape liability without any explanation of the reason for his inability to comply with his contract. Therefore, in an action in contract on the implied warranty, the lessor, perhaps, makes out a *prima facie* case when he shows that the lessee surrendered the premises at the end of the term *sans* a building, and the burden rests on the defendant lessee to prove the exculpatory facts or, at least, to go forward with evidence tending to bring the loss within the exceptive provisions of the law.

This we need not now decide for plaintiff casts her action in tort for negligence and not in contract for breach of covenant. Having elected to rest her case upon an allegation of negligence, she must prove it. This she has failed to do.

In an action for negligent injury to the demised premises by the tenant no recovery can be had without proof of negligence. *Mansfield Motors v. Freer,* 182 N. E., 51.