THE DIXIE FIRE & CASUALTY COMPANY, PLAINTIFF *v.* ESSO STANDARD OIL COMPANY, STANDARD OIL COMPANY OF NEW JERSEY, HUMBLE OIL AND REFINING COMPANY, AND ESSO DIVISION OF HUMBLE OIL & REFINING COMPANY, ORIGINAL DEFENDANTS, AND JULIAN F. HEAD, ADDITIONAL DEFENDANT.

(Filed 23 July 1965.)

**1. Negligence § 20—**

It is sufficient for plaintiff to allege facts establishing negligence and establishing such negligence as the proximate cause of his damage, and the failure of the complaint to allege the conclusions of negligence and proximate cause is not a defect.

**2. Same—**

Allegations that a filling station attendant failed to place the prong of the lift in proper position to hold an automobile he was raising, that the automobile slipped on the lift in such manner that the prong on the lift punctured the gasoline tank, causing gasoline to run from the tank, and that the gasoline vapors were ignited by the open flame of a heater nearby, *held* sufficient to allege actionable negligence, notwithstanding failure of plaintiff to use the term "proximate cause."

**3. Landlord and Tenant § 17—**

Lessee, in the absence of specific agreement to the contrary, is under implied obligation to treat the demised premises in such manner that no injury be done the property, and while lessor may not hold lessee liable for accidental damage by fire, he may hold lessee liable for damage by fire resulting from negligence. Lessor's covenant to make all repairs to the demised premises at his own expense is not a covenant excluding such implied obligation.

**4. Contracts § 10—**

Contracts exempting a party from liability for negligence are not favored by the law and are to be strictly construed.

**5. Landlord and Tenant § 8—**

In the absence of an agreement to the contrary, the sublease of the premises does not release lessee from his obligations under the lease, including the implied obligation not to damage the premises as a result of negligence.

**6. Landlord and Tenant § 17—**

The allegations were to the effect that lessees of a filling station subleased same and that sublessee was guilty of negligence resulting in damage to the premises by fire. *Held:* Liability of lessee to lessor for the negligent act of the sublessee is not based on the principle of *respondeat superior* but is based upon breach of implied covenant by lessor that waste would not be committed by negligence in the use of the property, and under express covenant of lessee to indemnify and save lessor harmless from any claims through the negligence of lessee, his sublessee and assigns.

**7. Same—**

An action. for waste may be brought before the expiration of the term, and although the existence of the lease contract establishes the relationship upon which the duty to exercise due care arises, the action for waste resulting from negligent conduct sounds in tort.

**8. Negligence § 1—**

While breach of contract does not ordinarily give rise to an action in tort, where the contract imposes a duty to exercise due care in the performance of the contract and that duty is violated, an action may be maintained to recover the resulting damages on the theory of negligence.

**9. Landlord and Tenant § 5—**

An agreement in the lease that lessor should not exercise any of his remedies against lessee by reason of any default until after 30 days notice by registered mail applies to possessory remedies of lessor and does not require lessor to give notice of his claim for damages from waste.

**10. Insurance § 86—**

Insurer paying the landlord damages resulting from a fire caused by negligence is subrogated to the landlord's rights against the third person tort-feasor causing or responsible for the loss. G.S. 58-176.

**11. Courts § 9—**

The denial of a motion for leave to amend does not preclude movant from again making the motion upon later trial before another 'Superior' Court judge.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Walker, S. J.,* February 15, 1965, Civil Session of GUILFORD (Greensboro Division).

Action by plaintiff insurance company to recover of defendants a sum paid to an insured on account of a fire loss. Summons was issued 12 October 1960.

We set out herein only such matters appearing in the pleadings and proceedings as are essential to an understanding of the legal question presented by this appeal. The three corporate defendants are hereinafter referred to merely as "Esso," and this designation may in a particular instance refer to only one or to all of these defendants.

The complaint, summarized in part and verbatim in part, states these facts:

On 24 November 1954 James M. Bullard and others leased in writing to Esso a lot, containing a service station building, located in Gilmer Township, Guilford County, at the northeast corner of the intersection of Bessemer Avenue and Elwell Avenue, for a term of 15 years. An annual rental, payable in equal monthly installments, is specified.

The lease, which is attached .to the complaint and made a part thereof, provides among other things that:

"(5)   Lessee may move, remove or alter any building, structure, tank, curbing, pavement or driveway now or hereafter placed on said premises and may construct, build and place upon said premises such buildings, structures, tanks, curbings, pavement, driveways, machinery and other equipment as shall in its opinion be necessary or desirable to use and operate said premises, and may perform any and all acts necessary to the conduct of its business.

"Lessor agrees that all buildings, structures, tanks, machinery, equipment and all other property owned by Lessee heretofore or hereafter placed upon the premises, whether annexed to the freehold or not, shall remain the personal property of Lessee, and Lessee shall have the right and privilege (but shall be under no obligation) to remove such property at any time during the period of this lease or any renewal thereof. . . ."

"(7)   Lessee may sublet all or any part of the premises but no such subletting shall release the Lessee from its obligations hereunder.

"(8)   Anything herein contained to the contrary notwithstanding, Lessor agrees not to exercise any landlord's remedies against Lessee by reason of any default unless and until Lessor shall have given to Lessee written notice by registered mail of the default and unless Lessee shall have failed to remedy such default within a period of thirty (30) days from the giving of such notice."

"(10)   Lessor agrees at Lessor's own cost and expense to . . . make promptly any and all repairs to the demised property including (but not limited to) repairs and improvements required by public authority. . . ."

"(15)   Lessee covenants and agrees to indemnify and save Lessor harmless from any and all claims, (and) demands . . . for or on account of damage or injury . . . to property . . . of Lessee, its agents, servants or other party or parties caused by or due to the fault or negligence of Lessee, its sublessee and assigns in the operation of the service station."

On 13 September 1957 James M. Bullard and his co-owners conveyed the property to F.C. Caveness, subject to Esso's lease; Caveness succeeded to the rights of the lessors under the lease. Esso sublet the property to Julian F. Head (Head) and Head was sublessee of the property and was operating the service station on 13 November 1957. On that date Head "was in the process of raising an automobile on a lift pre-

paratory to greasing the said automobile; . . . the said Julian F. Head negligently failed to place the prong on the lift in its proper position around the axle of the automobile to hold it in place; . . . as the lift was being raised, the automobile slipped on the lift in such a manner that the prong on the lift punctured the gasoline tank of the automobile, causing gasoline to run from the tank down to the floor beneath the lift; . . . at the same time there was in the very near vicinity of the lift a certain open flame heater known as a salamander-type heater with a flame burning in said heater; . . . as the gasoline vapors and the gasoline ran to the floor from the punctured gasoline tank the gasoline and gasoline vapors were ignited by the flames of the said salamander-type heater, which fire spread throughout the entire building and burned and badly damaged said building." Caveness had the building repaired at the cost of $8,346.57. Plaintiff insurance company had issued to Caveness a fire insurance policy covering the risk; it made investigation and paid Caveness the cost of the repairs. At the time of the payment Caveness "executed a settlement and subrogation agreement which by its terms and provisions provided that the insured assigned, transferred and set over to the insurer any and all claims and causes of action of whatever kind and nature which the insurer had . . . to recover against any person or persons as the result of said occurrence and loss. . . ."

Esso demurred, asserting that the facts alleged do not constitute a cause of action for that (1) "there is no allegation that the alleged negligent acts of Julian F. Head proximately caused the fire in question," and (2) the facts alleged do not show that Esso was negligent or was responsible for the negligence of Head. The demurrer was overruled by order of Olive, J., on 6 March 1961.

Esso answered and stated, among other things, that if it was liable Head was obligated to indemnify Esso under an indemnity agreement he had executed. On motion of Esso, Head was made an additional party defendant by order of Gambill, J., dated 3 April 1961. Head answered.

The case was calendared for trial at the January 18, 1965, Session of Guilford superior court. At that session Esso moved that plaintiff be required to elect whether it would proceed in tort or in contract. Thereupon, plaintiff moved for leave to amend its complaint in order to allege negligence and proximate cause with more particularity, and to allege the breach of certain sections of the Fire Prevention Code. By order dated 20 January 1965, McLaughlin, J., denied plaintiff's motion to amend and allowed Esso's motion to require plaintiff to make an election of remedies. On 21 January 1965 plaintiff elected in writing

"to proceed in negligence." Plaintiff excepted to the denial of its motion to amend.

The case was calendared for trial at the February 15, 1965, session. After hearing arguments of counsel and considering briefs filed by the parties, Walker, S. J., sustained demurrer *ore tenus* interposed by Esso on the ground "that the complaint fails to allege a cause of action in negligence."

*Jordan, Wright, Henson & Nichols, and Karl N. Hill, Jr., for plaintiff.*

*Smith, Moore, Smith, Schell & Hunter, and Richmond G. Bernhardt, Jr., for Original Defendant Appellees.*

MOORE, J.   Plaintiff assigns as error the ruling that the facts alleged in the complaint do not constitute as against the original defendants, Esso, a cause of action sounding in tort.

The ultimate facts stated are sufficient, if established, to support a finding that Head, the sublessee, was negligent and his negligence was a proximate cause of the damage to the building. Only the *facts* which constitute the negligence and the *facts* which establish such negligence as a proximate cause of the damage need be stated. There is no requirement that the pleader state its conclusions. On demurrer only facts properly pleaded are to be considered; legal inferences and conclusions of the pleader, if stated in the complaint, are to be disregarded. G.S. 1-122; *Gillispie v. Service Stores,* 258 N.C. 487, 128 S.E. 2d 762; *Shives v. Sample,* 238 N.C. 724, 79 S.E. 2d 193.

It is apparent that the judge below was of the opinion, in consideration of all of the facts alleged, that the lessee, Esso, is not legally responsible to the lessor, Caveness, or his subrogee, plaintiff insurance company, for the damage to the demised property caused by the negligence of the sublessee, Head. Hence, the matter of responsibility on the part of the lessee is the ultimate question for decision.

Formerly a lessee was liable in an action for waste for damage to or destruction of buildings on land covered by the lease, even if the damage or destruction was the result of an accident or of the act of a stranger. See concurring opinion of Barnhill, J., (later C.J.) in *Rountree v. Thompson,* 226 N.C. 553, 555, 39 S.E. 2d 523. Now by statute, G.S. 42-10, in North Carolina a tenant "shall not be liable for damage occurring on the demised premises accidentally, and notwithstanding reasonable diligence on his part, unless he so contract."

The law as it now stands in this jurisdiction is stated in *Winkler v. Amusement Co.,* 238 N.C. 589, 79 S.E. 2d 185, thus: "In every lease there is, unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to use rea-

sonable diligence to treat the premises demised in such manner that no injury be done to the property, but that the estate may revert to the lessor undeteriorated by the wilful or negligent act of the lessee. The lessee's obligation is based upon the maxim *sic utere tuo ut alienum non laedas.* The lessee is not liable for accidental damage by fire; but he is liable if the buildings are damaged by his negligence. *Moore v. Parker,* 91 N.C. 275; *Hollar v. Telephone Co.,* 155 N.C. 229, 71 S.E. 316; *U. S. v. Bostwick,* 94 U.S. 53, 24 L. Ed. 65; 32 Am. Jur., Landlord and Tenant, 669; 51 C.J.S., Landlord and Tenant, 904."

In the lease in the instant case "Lessor agrees at Lessor's own cost and expense to . . . make promptly any and all repairs to the demised property." If Esso is otherwise responsible to Lessor for the fire damage, this provision of the lease imposing upon Lessor the duty to make repairs at his own expense does not relieve Esso of its responsibility for the damage. As stated in *Winkler v. Amusement Co., supra:* "Contracts for exemption from liability for negligence are not favored by the law, and are strictly construed against the party asserting it. The contract will never be so interpreted in the absence of clear and explicit words that such was the intent of the parties. *Hill v. Freight Carriers Corp.,* 235 N.C. 705, 71 S.E. 2d 133, where the authorities are cited." It is not reasonable to construe the covenant of the lessor to make repairs as meaning that the parties intended that lessor should repair damages caused by negligence for which lessee is responsible. We find no express covenant or agreement in the lease which excludes therefrom the implied obligation on the part of lessee to treat the demised premises in such manner that no injury be done to the property, and this obligation must be considered an effective provision of the lease.

The demised property was sublet by Esso to Head. ". . . the sublessees *(sic)* liability runs only to the lessee who in turn is responsible to the lessor. . . . There is no privity of contract between the lessor and sublessee." 3A Thompson on Real Property, § 1210, pp. 52, 53; *Dunn v. Barton and Hazelton,* 16 Fla. 765; *Garbutt & Donovan v. Barksdale-Pruitt Junk Co.,* 139 S.E. 357 (Ga.). "A subletting, although assented to by the lessor, does not in any way affect the liability of the original lessee on the covenants of the lease unless there is a surrender and substitution of tenants. . . . The original lessee is responsible for any violation of the covenants of the lease by the sublessee, whether or not he knew of such violation. . . ." 51 C.J.S., Landlord and Tenant, § 47, p. 578; *Burke v. Bryant,* 128 A. 821 (Pa.); *Rourke v. Bozarth,* 229 P. 495 (Okla.).

In *McGaff v. Schrimshire,* 155 S.W. 976 (Tex.), lessee sublet property. There was no agreement by lessor that lessee should be released.

The property was damaged by the sublessee. It was held that lessee was liable to lessor for the damages.

In *Barkbaus v. Producers' Fruit Co.*, 219 P. 435 (Cal.), plaintiff leased to defendant an orchard; defendant-lessee covenanted to keep the trees in healthy condition and plaintiff-lessor reserved the right to supervise the care of the orchard. The property was subleased, and defendant retained the right of control and supervision. The trees were damaged by neglect and improper methods and procedures. Held: "The defendant (lessee) . . . continued to be obligated to the plaintiff (lessor) upon the covenants of the original lease."

*Bishop v. Associated Transport, Inc.*, 332 S.W. 2d 696 (Tenn.), is in most material respects legally and factually analogous to the case at bar. The sublessee deliberately set fire to and destroyed the buildings on the demised premises. Lessor sued lessee to recover damages for the burning. The original lease provided that lessee might sublet the property "provided the lessee shall nevertheless remain liable to lessor for the performance of all of the terms and conditions on lessee's part to be performed" under the lease. Lessee "had no knowledge of the unlawful act of Jess Wilson (sublessee) and such act was not permitted by defendant (lessee)." The court declared that "the question of responsibility on the part of lessee is the ultimate question for decision here," and addressing itself to certain aspects of the case said:

> "When the lessee subleased to Jess Wilson, the second covenant of the lease (dealing with subletting — quoted above) . . . operated to render the lessee liable to the lessor for the performance of all the terms and conditions of the contract in the hands of the sub-lessee, and we think that the fact that Wilson, the sublessee, may have acted without the permission of the lessee in destroying the property, is not determinative of the questions here involved." Parentheses added.

> "We think that where the leased premises were destroyed by fire which was deliberately set by the lessee or by one for whose violation of the covenants of the lease the lessee is liable, there was a breach of the covenant to return the premises in good repair. . . ."

> "As stated in 32 Am. Jur. 339 and in many cases, a subletting does not in any manner affect the liability of the lessee to his lessor for the performance of the covenants of the lease, and especially is this true where the lease, as in the case at bar, provides that the lessee shall remain responsible, and where the lessor has no·control whatsoever over the selection of the sublessee."

It seems there is as strong, if not stronger, grounds for liability of the lessee to the lessor in the case at bar than in the *Bishop* case. The

lease provides that "Lessee may sublet all or any part of the premises but no such subletting shall release the Lessee from its obligation" under the lease. One of lessee's obligations was "to treat the premises demised in such manner that no injury be done to the property." Esso did not *assign* its lease to Head: it merely sublet the property. Lessor did not agree to accept Head as tenant as a substitute for Esso, and did not agree to release Esso from its obligation. Lessor did not agree that Esso might delegate its duty to Head and thereby be relieved of responsibility. Lessor did not reserve the right to select the sublessee or to pass upon his qualifications or financial responsibility. These matters were left entirely to Esso. Lessor looked to Esso for the reasonable care and protection of the property in the manner of its use, and Esso agreed to assume the responsibility. The acts of negligence alleged arose in the course of the use of the premises for the purpose for which it was leased. It was within the power and privilege of Esso to bind the sublessee to protect it with respect to its obligation to lessor. It is true that the sublessee was not the agent of Esso in the ordinary sense, and Esso's liability to lessor is not based on the principle of *respondeat superior*. But it is also true that Esso put sublessee in possession and control of the property and assumed the risk that sublessee might breach the covenants, express and implied, by which Esso had bound itself in its solemn contract with lessor. Liability of Esso to lessor was imposed by breach of the implied covenant that waste would not be committed by negligence in the use of the property — the observance of the covenant being a duty which, by terms of the lease, Esso could not delegate to a sublessee so as to relieve it of responsibility.

There is further evidence of Esso's assumption of liability to lessor for damage in the nature of waste arising from negligence in the use of the property. The lease provides as follows: "Lessee covenants and agrees to indemnify and save Lessor harmless from any and all claims, (and) demands . . . on account of damage or injury . . . to property of Lessee, its agents, servants or other party or parties caused by or due to the fault or negligence of lessee, its sublessee and assigns in the operation of the service station." Taking the allegations of the complaint to be true, as we must in testing the complaint by demurrer, the building was injured by the negligence of Esso's sublessee "in the operation of the service station," lessor has borne the loss and is entitled to be indemnified by Esso. The building is "property of . . . other party or parties," and Esso had a property right therein. Esso's liability does not depend upon this indemnity agreement, but it is sufficient within itself to support liability.

An action for waste may be brought before the expiration of the term. 51 C.J.S., Landlord and Tenant, § 262(b), p. 906. "The nature of

the wrongful act or omission for which a remainderman is entitled to recover for waste is a tort. Though the acts of a tenant are tortious in their nature, they may also be breaches of his contract with his landlord for which the tenant will be responsible in an action *ex contractu.* . . . An action may be one of tort purely, although the existence of a contract may have been the occasion or furnished the opportunity for committing the tort. It would be sufficient to allege the making of a lease, the entry of the lessee, the good condition of the premises, and the injury caused by the bad management of the lessee. Such a cause of action is one sounding in tort and not in contract." 3A Thompson on Real Property, § 1279, pp. 397-398.

"Ordinarily, a breach of contract is not a tort, but a contract may create the state of things which furnishes the occasion of a tort. The relation which is essential to the existence of the duty to exercise care may arise through an express or implied contract. . . . The sound rule appears to be that where there is a general duty, even though it arises from the relation created by, or from the terms of, a contract, and that duty is violated, either by negligent performance or negligent nonperformance, the breach of the duty may constitute actionable negligence." 38 Am. Jur., Negligence, § 20, pp. 661, 662. The lease and subletting created relationships and duties, the negligence resulting in damage gave rise to the cause of action. The action alleged sounds in tort and may be maintained on the theory of negligence.

It is suggested that the action is barred by failure of lessor and plaintiff to give notice as provided by the following clause of the lease: "Anything herein contained to the contrary notwithstanding, Lessor agrees not to exercise any landlord's remedies against Lessee by reason of any default unless and until Lessor shall have given to Lessee written notice by registered mail of the default and unless Lessee shall have failed to remedy such default within a period of thirty (30) days from the giving of such notice." We do not agree that the present action is barred by failure to give notice. The use of the words "landlord's remedies" and "default" and the allowance of only 30 days to remedy default, indicate that the parties had in mind the landlord's possessory remedy. For a list of landlord's possessory remedies at common law, see 32 Am. Jur., Landlord and Tenant, § 1008, pp. 845, 846. In this jurisdiction the remedy is by proceeding in summary ejectment. G.S. 42-26 to 37. See also G.S. 42-8. The parties did not contemplate the construction or extensive repair of a burned building within a 30-day period. See *Bishop v. Associated Transport, Inc., supra.*

An insurance company paying a loss is subrogated to the rights of the insured against the third person tort-feasor causing or responsible for the loss, to the extent of the amount paid, both by the provision of

G.S. 58-176 and under equitable principles. *Winkler v. Amusement Co.,* *supra.*

There are questions which may cause concern to one interested in the procedures following the institution of this action and the filing of the complaint: (1) Whether the holding of Olive, J., overruling demurrer precluded the later ruling of Walker, S.J., sustaining demurrer; (2) whether it was proper to bring in the sublessee as an additional defendant on the theory that he had expressly contracted to indemnify Esso; and (3) whether plaintiff should have been required to make an election of remedies before its evidence was in. These questions are not presented by exceptions and assignments of error and are not discussed in the briefs. We express no opinion with respect thereto, and this case does not constitute authority or precedent on any of these points.

The ruling of the court on plaintiff's motion to amend the complaint is not *res judicata.* If so advised, any of the parties may hereafter move in superior court for leave to amend the pleadings. *Overton v. Overton,* 260 N.C. 139, 132 S.E. 2d 349. "The doctrine of *res judicata* does not apply to ordinary motions incident to the progress of the trial." 1 Strong: N. C. Index, Courts, § 9, p. 656.

The judgment below sustaining the demurrer *ore tenus* is
Reversed.

PARKER, J., took no part in the consideration or decision of this case.