Barry **MINKOFF,** General Partner East Blade Investors Limited Partnership Successors in Interest to Harry Minkoff and Allen Baer, Trustees, Plaintiff,

v.

**CLARK TRANSFER, INC.,** and Highway Film Service, Inc., Defendants.

Civ. A. No. 92–0349.

United States District Court, District of Columbia.

June 2, 1993.

Order on Motion to Amend Dec. 7, 1993.

Marc S. Moskowitz and Gary M. Fremerman, Anderson, Kill, Olick & Oshinsky, Washington, DC, for plaintiff.

William C. Brennan, Jr. and Daniel F. Lynch (pro hac vice), Knight, Manzi, Brennan, Ostrom & Ham, P.A., Upper Marlboro, MD, for defendants.

### OPINION

JUNE L. GREEN, District Judge.

This case arises out of the discovery of leaking underground storage tanks located at

plaintiff's rental property, 3194 Bladensburg Road, N.E. in the District of Columbia ("the Property"). The plaintiff leased the Bladensburg Road property to defendants Clark Transfer, Inc. ("Clark") and Highway Film Service, Inc. ("Highway") from 1964 to 1984. At some point in the beginning of the lease term, underground storage tanks were installed to supply fuel for the defendants' trucking operation and to store waste oil. In 1987, plaintiff was ordered by the District of Columbia Fire Department to remove the tanks within 90 days or show cause for failure to do so. The tanks were not removed until September 1990. More than seven thousand gallons of fuel were pumped out of the tanks before they were removed from the ground. Upon removal, the tanks were discovered to be corroded and leaking. Under the direction of the District of Columbia Department of Consumer and Regulatory Affairs, Environmental Control Division the plaintiff arranged for the cleanup of the contamination caused by the leaking fuel. Plaintiff seeks to recover from the defendants the costs associated with the cleanup. The plaintiff asserts common law claims for breach of contract, waste, negligence, nuisance, trespass, and ultra-hazardous activity, as well as claims pursuant to the underground storage tank and citizen suit provisions of the Resource Conservation and Recovery Act ("RCRA"), sections 9001–9010, 42 U.S.C. §§ 6991–6991i, and section 7002, 42 U.S.C. § 6972, respectively. Plaintiff also requests, pursuant to 28 U.S.C. § 2201, a declaration of its rights and liabilities in relation to the defendants concerning their respective obligations for costs which have been incurred and may in the future be incurred by plaintiff in connection with the investigation and cleanup of contamination at the Property.

This matter was tried before the Court without a jury on May 10, 1993. After considering all of the testimony, exhibits, and arguments presented, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

Plaintiff Barry Minkoff is the general partner of East Blades Investors Limited Partnership which is the owner of the Property. In March 1964, the plaintiff's predecessor in interest leased the Property to defendant Clark and its subsidiary, defendant Highway. The parties executed a lease dated March 5, 1964 ("Lease"), the contents of which are not in dispute. Sometime between 1964 and 1965 the defendants installed five underground storage tanks in the parking area of the premises to fuel their vehicles and store waste oil.[1] The underground storage tanks consisted of two 5,000 gallon diesel fuel tanks, two 6,000 gallon gasoline fuel tanks, and one 1,000 gallon waste oil tank.

The Lease obligated the defendants to "maintain and repair the demised premises including the parking area, its driveway and the appurtenances thereto belonging and every part thereof with all kinds of necessary repairs...." Lease, ¶ 3. The defendants were further obligated under the Lease to "promptly comply with, observe and perform

---

1. The parties vigorously disputed the question of which party installed, or arranged for the installation of the underground storage tanks. The building permits approving the installation of the tanks are inconclusive on this question. However, the Plaintiff presented undisputed evidence that the tanks were never used by the Plaintiff, did not appear upon architectural and engineering plans commissioned by Plaintiff for the construction of the buildings and driveway on the Property, and were not recorded together with other Property assets on the Plaintiff's tax return depreciation schedules.

Defendants suggested that a fuel company may have installed the tanks in return for the Defendants' exclusive purchase of the company's fuel. But the Defendants presented no documentary evidence of this and lamented that all the documents relating to the order and delivery of fuel to the Property over the course of the twenty year lease were destroyed. Mr. Howard Henes, the President of the Defendant Clark, testified to his exhaustive search for documents relating to the tanks and fuel delivery. Although he reported that it was the company's policy to destroy documents after six years time, he was able to produce two letters relating to the Property dated in March 1982. Astonishingly, the Defendants' other witness, Mr. Daniel McClafferty, who was in charge of all operations at the Property on behalf of the Defendants since 1971 and who alone staffs the company's office in the D.C. area, now located in Upper Marlboro, Maryland, testified that he was never asked to search for any documents or records relating to tanks.

all of the requirements of all of the statutes, ordinances, rules, orders and regulations, [then] in effect or [t]hereafter promulgated, whether required by Federal or Municipal Governments and whether required of the LESSEE or LESSORS." Lease, ¶ 10.

The Lease term ran from August 1, 1964 to July 31, 1974 with provisions for two five-year renewals. The defendants exercised both options for renewal, extending the Lease term until July 31, 1984. In March 1982, the plaintiff inspected the Property and in a letter to defendant Highway identified damage done to the parking lot, the overhead doors, exit doors and the loading docks.

In June or July of 1982, the defendants transferred all their commercial operations to another location and vacated the Property except for storage purposes. From that point onward the defendants stopped using the underground storage tanks. More than seven thousand gallons of fuel and waste oil remained in the tanks. However, the defendants made no efforts to remove such fuel and oil or to comply with District of Columbia Fire Prevention regulations requiring such removal.

With respect to underground storage tanks no longer in use, the District of Columbia Municipal Regulations, then in effect, required that "(a) All of the flammable liquid shall be removed from the tank; (b) The tank shall be removed from the premises or filled with an inert, solid material; (c) All pipe lines shall be disconnected from the tank; and (d) All openings in the tank shall be capped wrench tight." District of Columbia, Mun. Regulations, Title 25, § 1034.5 (August 1983). No credible evidence was presented to support defendants' suggestion that perhaps plaintiff intended to use the tanks after the defendants completely vacated the property in 1984. The Court finds that the tanks were taken out of use and abandoned in June or July of 1982.

Two years later, the defendants vacated the Property in full. On July 31, 1984, the last day of the Lease, the plaintiff conducted a "walk-through" on the Property with a representative of the defendants. The parties agreed upon an amount of money that would be held back by plaintiff to cover the cost of repairing certain damages to the Property. There was no discussion regarding the underground storage tanks.

Thereafter, the plaintiff leased the premises to Universal Appliance Company ("Universal"). The new tenant converted the Property's parking area to use as a storage lot for the tenant's used and reconditioned appliances.

In early May 1987, the plaintiff was informed by notice from the D.C. Fire Department of a "hazardous condition," and "underground tanks (gasoline-diesel) not abandoned properly. Not removed from the ground." Pl.'s Exhibit 5. Citing Section 1034 of the D.C. Municipal Regulations, the Fire Department inspector instructed plaintiff to "remedy the conditions" within 90 days or show cause why plaintiff should not be required to do so.

Plaintiff requested permission from the Fire Department to abandon the tanks by filling them with sand and leaving them in the ground. This request was denied. Nevertheless, plaintiff was reluctant to remove the tanks. Universal informed plaintiff that any excavation of the tanks from the Property's parking area would force a complete cessation of Universal's storage and sales activities and pleaded with plaintiff not to disrupt its business. Plaintiff's property manager, Mr. George Tyler, presented this dilemma to the D.C. Fire Department inspector charged with handling the matter and requested further directions. For unexplained reasons, the Fire Department inspector did not respond to this request and did not act on several phone calls made by Mr. Tyler to the Fire Department.

Mr. Tyler testified that he allowed the matter to sit unattended, while the "ball was in their court," until he learned of the potential for serious liabilities associated with underground storage tanks. In or about September of 1990, Mr. Tyler persuaded the plaintiff to have the tanks removed.

Plaintiff incurred the following charges in connection with the removal of the tanks and the cleanup of the Property for which he seeks recovery:

| | | |
|---|---|---|
| 1. | Air Analysis Associates | $ 870.00 |
| 2. | Bevard & Walden | 18,029.50 |
| 3. | N & S Towing | 65.00 |
| 4. | Testwell Craig | 14,719.76 |
| 5. | Environmental Resource Management | 17,502.25 |
| 6. | H & H Construction | 12,287.85 |
| 7. | Wayne Keefer | 1,142.88 |
| 8. | Gascoyne Laboratories | 2,860.00 |
| 9. | Haley & Aldrich | 8,215.43 |
| 10. | George Tyler management fees | 8,075.00 |
| | Total | $83,767.24 |

In addition, plaintiff wishes to recover the cost of relocating Universal to alternate rental space, totalling $21,375.00. Defendants dispute the validity of plaintiff's claim to recover Mr. Tyler's fees, the charge for alternate rental space and part of the Haley & Aldrich bill. While the Court finds that the services of Haley & Aldrich were reasonably retained by plaintiff, the Court is not persuaded that the alternate rental space, which is also owned by the plaintiff, is reasonably claimed as a damage here. Plaintiff was unable to establish the opportunity cost in allowing its tenant, Universal, to occupy the alternate space. Thus, the Court disallows this claim.

At trial defendants urged the Court to reject plaintiff's claims, arguing that plaintiff's causes of action are barred by the statute of limitations or by laches. In addition, defendants argued that plaintiff waived all claims against defendants when the parties met for the "walk-through" at the end of the Lease term and plaintiff failed to discuss any damages or potential damages posed by the underground storage tanks. Defendants also contend that plaintiff's delay in removing the tanks after notification by the D.C. Fire Department precludes any recovery because during that time period plaintiff could have reasonably mitigated the damage caused by the leaking tanks.

## II. CONCLUSIONS OF LAW

### A. *State of Limitations; and Laches*

■ The parties agree that plaintiff's claims are governed by the District of Columbia statute of limitations. The Court finds that plaintiff's causes of action are encompassed by the provision of the District of Columbia statute of limitations allowing "recovery of damages from an injury to real property from toxic substances...." D.C.Code Ann. § 12–301(10) (1989)[2]. This provision requires such actions to be commenced within "5 years from the date the injury is discovered or with reasonable diligence should have been discovered." *Id.*

Plaintiff argues that his claims fall within the statutory period because he discovered the injury in 1990 upon excavating the tanks. Defendants, on the other hand, argue that plaintiff's claims fall outside of the limitations period because plaintiff should have discovered the injury much earlier than 1990. Defendants contend that plaintiff had a continuing obligation to inspect the tanks since the time that plaintiff knew the tanks existed in the 1970's and thus should have discovered the injury in the 1970's, or at least by 1984 after defendants vacated the Property.

Both arguments are amiss. The fact that plaintiff was aware of the existence of tanks in the early 1970's did not constitute knowledge of any injury. Neither did such awareness obligate plaintiff to inspect the tanks on a continuing basis during the course of the Lease. Plaintiff contracted away that obligation to the defendants in Paragraph 10 of the Lease which required the lessee to comply with all federal or municipal statutes, ordinances, rules, orders and regulations whether required of Lessee or Lessor. Furthermore, the plaintiff was justified in relying upon the assumption that defendants had complied with all the laws regarding the tanks until otherwise put on notice. Plaintiff was put on notice of such noncompliance on or about May 6, 1987 when plaintiff received notification from the D.C. Fire Department of a hazardous condition relating to the tanks on the Property. The Court finds that plaintiff, beginning on or about May 6, 1987, either knew of or should have discovered the injury. The plaintiff commenced his action

---

2. Defendants argue that Section 12–301(10) is inapplicable to this case because the D.C.Code nowhere defines gasoline, diesel, or oil as "toxic" substances. Their argument is unsupported. Section 12–301(10) neither attempts to define all toxic substances, nor excludes petroleum derivatives from its ambit. Furthermore, the toxicity of these substances is well-settled. *Northglenn v. Chevron U.S.A. Inc.*, 519 F.Supp. 515, 516 (D.Colo.1981).

in 1991. Thus, his claims fall comfortably within the applicable five-year limitations period. D.C.Code § 12–301(10), *supra.*

Defendants argue, alternatively, that plaintiff's action is barred by the equitable defense of laches. It is now impossible, they contend, for this Court to determine who was responsible for the installation and maintenance of the tanks during defendants' occupancy of the premises because documents have been destroyed, memories have faded and witnesses have either died or disappeared. For this reason, defendants argue, they have been prejudiced by the delay and are entitled to equitable protection under the doctrine of laches.

■ To determine whether laches applies, the trial court must look primarily to the reasons for the delay in bringing the action and to the prejudice suffered by the defendants as a result of the delay. *Gardner v. Panama R. Co.,* 342 U.S. 29, 30–31, 72 S.Ct. 12, 13–14, 96 L.Ed. 31 (1951). Additionally, where the action has been brought prior to the expiration of the applicable limitations period, it is presumed that the doctrine of laches does not bar the action and the burden is on defendants to show extraordinary circumstances requiring its application. *Pepper v. Truitt,* 158 F.2d 246, 251 (10th Cir.1946); *Barca v. Matson Navigation Company,* 211 F.Supp. 840, 841 (E.D.La. 1962).

■ Here, defendants have failed to meet their burden because they have not shown prejudice. For the purposes of this analysis, the only delay which might have prejudiced the defendants occurred from the time that plaintiff first became aware of any potential cause of action relating to the tanks, in May 1987, until plaintiff put defendants on notice of its claim in a letter to defendant Highway, in November 1990. *See* Pl.'s Exhibit 9. Defendants have failed to establish that any evidence material to their defense was lost or destroyed during this period of time.

Furthermore, the Court was not persuaded that defendants searched for the relevant documentation as diligently as claimed. Defendant Clark's president's testimony that all company documents are destroyed after six years was inconsistent with his ability to locate documents from 1982. *See* Note 1, *supra.* In addition, Mr. Daniel McClafferty, the defendants' employee in charge of the Property since 1971, testified that he was never asked to search for documents in the company's Upper Marlboro office, the location to which all operations from the Property were transferred in 1982.[3]

Finally, defendants have also failed to show that any witnesses with knowledge relevant to their defense died or disappeared during the delay period. In any event, defendants do not claim to have lost any evidence to suggest that they were not bound by the provisions of the Lease which controls the outcome of this decision. For these reasons, the Court does not find the doctrine of laches applicable here.

**B.** *Plaintiff's Causes of Action*

■ Plaintiff asserts claims for breach of contract, waste, negligence, nuisance, trespass, and ultra-hazardous activity, as well as claims pursuant to the underground storage tank and citizen suit provisions of RCRA, sections 9001–9010, 42 U.S.C. §§ 6991–6991i, and section 7002, 42 U.S.C. § 6972, respectively.

The claims asserted by plaintiff provide overlapping forms of recovery. As the Court finds that plaintiff may recover on the breach of contract count of the Complaint, the Court does not reach the remaining counts.

In the Lease, the parties agreed that the defendants would bear the risk of any injury caused by the failure to comply with "all of the requirements of all of the statutes, ordinances, rules, orders and regulations, [then] in effect or [t]hereafter promulgated, whether required by Federal or Municipal Governments and whether required of the LESSEE or LESSORS." Lease, ¶ 10. The Court

---

**3.** At trial, Mr. McClafferty stated that he located, just before trial, a 1982 document indicating that "Gulf" supplied fuel to the Property. This document was not offered into evidence, though it would have been pertinent to the defendant's theory that a fuel supplier was the owner of the tanks.

finds that even after the Lease term, after the defendants had vacated the Property in July 1984, the plaintiff was entitled to rely upon the assumption that defendants had maintained the tanks in accordance with the prevailing laws and that defendants had not unlawfully failed to remove thousands of gallons of fuel from the tanks upon abandoning them. Defendants' compliance with such laws and plaintiff's ability to rely upon such compliance, absent evidence to the contrary, were elements of plaintiff's expectation interest in the bargained for exchange. *Oral–X Corp. v. Farnam Cos., Inc.,* 931 F.2d 667, 670 (10th Cir.1991); *Prior Oil Well Drilling Co. v. David A. Waldron and Associates, Inc.,* 601 F.Supp. 778, 779 (S.D.W.Va.1985).

The Court finds that the defendants stopped using and abandoned the underground storage tanks in June or July of 1982 when they transferred all business operations to Upper Marlboro. The Court further finds that during that period of time defendants were obligated under Paragraph 10 of the Lease to abandon the tanks in accordance with D.C. Municipal Regulation, Title 25, Section 1034.5. The defendants failure to comply with this regulation constituted a breach of the Lease. Defendants also breached their implied obligation under the Lease to remove all personal property at the end of the lease term. *United States v. Bostwick,* 94 U.S. (4 Otto) 53, 24 L.Ed. 65 (1877); *Rountree v. Thompson,* 226 N.C. 553, 39 S.E.2d 523 (1946). The fuel contained in the tanks was the personal property of the defendants.

But for the fact that defendants permitted more than seven thousand gallons of fuel and waste oil to remain in the tanks in 1982, the injuries complained of would not have occurred. The Court finds that defendants' breaches of the Lease caused all the injuries occurring to the property until, at least, May 6, 1987 when plaintiff was notified by the D.C. Fire Department of a hazardous condition on the Property owing to the tanks.

## C. *Damages*

■ While the Court finds that defendants breached the Lease and that such breach caused injury to the plaintiff's property, the Court does not find that plaintiff may recover all of the damages he seeks. A party may not recover damages for losses the party could have avoided without undue risk, burden or humiliation. *Lincoln National Life Ins. Co. v. NCR Corp.,* 603 F.Supp. 1393, 1405 (N.D.Ind.1984), aff'd 772 F.2d 315 (7th Cir.1985).

■ Defendants argue that plaintiff failed to mitigate damages to the Property by not removing the tanks immediately after being directed to do so by the D.C. Fire Department. Plaintiff defends this delay as reasonable in light of his obligations not to disturb his tenant's use and quiet enjoyment of the Property. Plaintiff argues that, even after the Fire Department denied his request to abandon the tanks by filling them with sand, he was justified in pursuing further direction from the Fire Department on how to resolve the conflict between plaintiff's obligations to his tenant and the Fire Department's order to remove the tanks. The Court finds, however, that plaintiff could have avoided damages by acting sooner than the fall of 1990. Plaintiff concedes that it was not any further instruction by the Fire Department which caused him to have the tanks removed. Rather, plaintiff reconsidered the matter in light of the potentially serious liabilities reported to him by his property manager, Mr. Tyler, and then decided to remove the tanks.

The Court is troubled in its attempt to apportion damages without evidence as to the exact time of the injury, or the extent to which the plaintiff's delay in removing the tanks allowed further damage to occur. However, the parties are responsible for this deficiency and the failure to offer any expert opinion on these issues. The Court hereby exercises the equitable belief that a party should not recover the damages it reasonably could have avoided. It is clear that plaintiff failed to act for more than three years following notification of a hazardous condition on the Property.

## III. CONCLUSION

For these reasons, the Court will not allow plaintiff to fully recover the cleanup costs

and reduces such recovery by twenty-five percent (25%).

■ Separate from this reduction, the Court disallows plaintiff's claim of $21,375.00 for relocating Universal to alternate rental space. Such rental space is owned by the plaintiff and plaintiff failed to substantiate the opportunity cost of allotting the space to Universal. Thus, the Court awards to the plaintiff a judgment for $62,825.43.

Also, due to the shared responsibility for damages in this case, the Court denies any recovery of attorney fees.

■ Finally, with respect to future costs to be incurred to complete the remediation activities at the Property, plaintiff is entitled to recover seventy-five percent (75%) of such costs from the defendants. This recovery pertains only to those investigation and remediation activities authorized and approved by the Pesticide, Hazardous Waste and Underground Storage Tank Management Division, Underground Storage Tank Branch, of the D.C. Department of Consumer and Regulatory Affairs. Furthermore, the plaintiff shall provide defendants with copies of all correspondence, reports and invoices which pertain to such future remediation costs.

An appropriate Judgment And Order is attached.

### JUDGMENT AND ORDER

Upon consideration of the testimony, exhibits, and arguments presented at trial in the above-captioned matter on May 10, 1993, as well as the Court's findings of fact and conclusions of law, dated June 2, 1993, it is by the Court this 2nd day of June 1993

**ORDERED** that plaintiff Barry Minkoff, general partner of East Blade Investors Limited Partnership, be awarded the sum of SIXTY–TWO THOUSAND EIGHT HUNDRED AND TWENTY–FIVE DOLLARS AND FORTY–THREE CENTS ($62,825.43) against the defendants Highway Film Service, Inc. and Clark Transfer, Inc.; it is further

**ORDERED** that, pursuant to 28 U.S.C. § 2201, plaintiff may recover from the defendants SEVENTY–FIVE PERCENT (75%) of the future costs of completing the investigation and remediation activities at the premises located at 3194 Bladensburg Road, N.E. in the District of Columbia, provided that such costs represent activities and services authorized and approved by the Pesticide, Hazardous Waste and Underground Storage Tank Management Division, Underground Storage Tank Branch, of the District of Columbia Department of Consumer and Regulatory Affairs, and provided that plaintiff provides defendants with copies of all correspondence, reports and invoices which pertain to such future remediation costs.

### ORDER

On June 2, 1993 the Court issued a Memorandum and Order entering judgment in favor of the plaintiff in this matter. Presently, Plaintiff has filed a motion to amend the Court's judgment in order to provide that Plaintiff may recover a portion of the attorney fees owed to Plaintiff's attorney and to a separate environmental law firm as a result of bringing the above-entitled action.

It is well established in the District of Columbia that attorney fees are not recoverable "absent a contract, a statutory provision, or a showing of unwarranted, oppressive, or vexatious conduct...." *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association, Inc.*, 385 A.2d 20, 24 (D.C.App.1978) (citation omitted).

In the instant action the Court has found that the parties entered into a valid lease contract and that the damages held to be recoverable by the plaintiff flowed from the defendants' breach of one of the covenants of the lease. *See* Majority at 429–30. The lease entered into by the parties also provides for the recovery of attorneys fees as follows:

Any suit for ... the breach of any covenant of this Lease Agreement by either party to this Lease shall entitle the LESSORS or the LESSEE to make claim for court costs and attorneys' fees as elements of damage in said suit with the Court or other body having jurisdiction of the suit to finally determine the amount of such Court costs and attorneys' fees to be al-

lowed to the prevailing party in the litigation.

*See,* Plaintiff's Trial Exhibit 1, at p. 10, ¶ 15. Thus, the Court finds that Plaintiff has a contractual basis upon which to recover attorney fees. *See Wisconsin Avenue Associates, Inc., supra,* at 24. The Court's award for the recovery of counsel fees shall be premised, however, upon its review of counsel's affidavit outlining the legal services and fees at issue.

Thus, having considered the Plaintiff's motion, the defendants' opposition, as well as the entire record of the case, it is by the Court this 7th day of December 1993

**ORDERED** that Plaintiff's motion to amend the Court's Memorandum and Order of June 2, 1993 is GRANTED as further provided; it is further

**ORDERED** that the Court shall grant a partial award of attorneys fees to Plaintiff after the submission by Plaintiff's counsel of an affidavit supporting his request for an award of fees charged by Plaintiff's counsel, as well as the law firm of Anderson, Kill, Olick and Oshinsky.