C. TOM GARDNER, PLAINTIFF v. EBENEZER, LLC AND JOSEPH P. SPEIGHT, III, DEFENDANT

No. COA07-1190

(Filed 6 May 2008)

**Landlord and Tenant— commercial lease—damage to building not repaired—ejectment for nonpayment**

The trial court did not err by granting summary ejectment for the lessor of commercial property where, after a fire in the building which had been sublet, the tenant stopped paying rent rather than repairing the damage and recovering the costs from the landowner or moving out and claiming constructive eviction. N.C.G.S. § 42-3.

Appeal by plaintiff and defendant Ebenezer, LLC, from order entered 20 February 2007 by Judge Quentin T. Sumner in Superior Court, Dare County. Heard in the Court of Appeals 18 March 2008.

*Aldridge, Seawell, Spence & Felthousen, LLP, by W. Mark Spence, for plaintiff-appellant.*

*Hornthal, Riley, Ellis & Maland, L.L.P., by M.H. Hood Ellis and L. Phillip Hornthal, III, for defendant-appellant Ebenezer, LLC.*

*Gray & Lloyd, by E. Crouse Gray, Jr., for defendant-appellee Speight.*

WYNN, Judge.

Where a commercial lease does not expressly provide for the lessor's reentry upon the tenant's nonpayment of rent, forfeiture of the lease is implied upon the tenant's "failure to pay the rent within

GARDNER v. EBENEZER, LLC

[190 N.C. App. 432 (2008)]

10 days after a demand is made by the lessor . . . for all past-due rent[.]"[1] Here, the lessee and sub-lessee argue that the trial court erred by granting summary ejectment against them and in favor of the lessor. Despite the lessor's failure to repair the property after a fire, because the tenants failed to pay rent, we affirm.

Defendant-appellee Joseph P. Speight, III is the owner of a lot and building located in Duck, North Carolina. On 24 November 1993, Mr. Speight entered into a commercial real estate lease agreement with Plaintiff-appellant C. Tom Gardner. Under the lease agreement, Mr. Gardner was given the right to assign or sublet the premises, and Mr. Speight agreed "to carry sufficient fire and flood insurance." Additionally, the lease contained a provision that stated:

> Should the building upon the leased space be destroyed or rendered unfit for the use and occupancy by fire or other casualty, the lease shall hereupon terminate. Should the building be partially destroyed, then Lessor shall make repairs to replace and restore building to the original standards of said lease.

Mr. Gardner owned and operated a restaurant in the leased premises until April 1996, when he sold the restaurant business to Ted Millican and Scott Kelly, and subleased the property to them. In turn, Mr. Millican and Mr. Kelly subleased the restaurant property to Whalebone Junction Resort, LLC, which subleased the property to Defendant-appellant Ebenezer, LLC, on 3 January 2005, with an effective date of the lease of 15 January 2005. As the sub-lessee, Ebenezer began operating a restaurant on the premises.

On 14 October 2005, a fire occurred in the restaurant. Although the premises were not destroyed by the fire, all the parties agree that the property was damaged to the point that a restaurant could not be operated until repairs were made.

After the fire, Ebenezer's managing member, Joel Jordan, initiated efforts to clean up and repair the restaurant. Ebenezer hired a contractor and obtained a demolition permit from the Town of Duck, which was limited to fire damage repairs only. However, in the process of its repairs, Ebenezer began additional, unauthorized remodeling and construction, including building a new deck and replacing old restaurant equipment with new equipment. On 15

---

1. N.C. Gen. Stat. § 42-3 (2005); *see also Charlotte Office Tower Associates v. Carolina SNS Corp.*, 89 N.C. App. 697, 700, 366 S.E.2d 905, 907 (1988) (stating that section 42-3 "applies only when a lease does not expressly provide for the landlord's reentry upon nonpayment of rents.").

GARDNER v. EBENEZER, LLC

[190 N.C. App. 432 (2008)]

November 2005, Ebenezer's insurance company indicated that Ebenezer did not have insurance coverage on the building. As a result, Ebenezer stopped work and initiated a clean up process which was completed on 18 November.

Mr. Speight admitted to making a written claim against his insurance carrier for the fire damage and receiving $45,443.46 from his insurance company. In his response to plaintiff's request for admissions, Mr. Speight asserted that he used the insurance proceeds "to pay for survey of property, fees to attorneys to deal with the Town of Duck to obtain permits; [and] Cost of permits." All parties agree that Mr. Speight did not use his insurance proceeds to pay for repairs of the premises.

Ultimately, as a result of the unrepaired fire damage, Ebenezer stopped paying rent to Mr. Gardner, and in turn, Mr. Gardner stopped paying rent to Mr. Speight.

On 28 June 2006, Mr. Gardner filed a complaint against Ebenezer and Mr. Speight, requesting a declaratory judgment that Ebenezer's sublease be terminated and Ebenezer ordered to vacate the premises, and that the lease with Mr. Speight continue in full force and effect, with Mr. Gardner entitled to possession of the premises. The parties then filed a series of answers, counterclaims, and cross-claims. Mr. Speight requested that the court eject Mr. Gardner and Ebenezer from the premises and, in the alternative, Mr. Speight's complaint provided notice to Mr. Gardner that the right of occupancy would be forfeited "upon failure to pay all present and back rent within ten (10) days after date of service." However, Ebenezer requested that the lease and sublease continue, with the rent abated, until the premises were repaired.

On 31 October 2006, Mr. Speight filed a motion for summary judgment. A hearing was held on 15 January 2007, and on 12 February 2007, the trial court issued an order of partial judgment, granting summary ejectment in favor of Mr. Speight, by ordering Mr. Gardner and Ebenezer be removed from the premises and Mr. Speight be put in possession of the premises, but denying summary judgment for Mr. Speight's other claims.

On appeal, Mr. Gardner and Ebenezer argue that the trial court erred by granting summary ejectment in favor of Mr. Speight.

A trial court conducting a summary ejectment proceeding for a commercial tenant obtains its jurisdiction from section 42-26 of our

General Statutes.[2] *ARE-100/800/801 Capitola, LLC v. Triangle Labs., Inc.*, 144 N.C. App. 212, 216, 550 S.E.2d 31, 34 (2001). Section 42-3 has also been applied to commercial leases to create an additional ground for summary ejectment. *Id.* Section 42-3 states:

> In all verbal or written leases of real property of any kind in which is fixed a definite time for the payment of the rent reserved therein, there shall be implied a forfeiture of the term upon failure to pay the rent within 10 days after a demand is made by the lessor or his agent on said lessee for all past-due rent, and the lessor may forthwith enter and dispossess the tenant without having declared such forfeiture or reserved the right of reentry in the lease.

N.C. Gen. Stat. § 42-3 (2005). However, section 42-3 "applies only when a lease does not expressly provide for the landlord's reentry upon nonpayment of rents." *Charlotte Office Tower Assoc. v. Carolina SNS Corp.*, 89 N.C. App. 697, 700, 366 S.E.2d 905, 907 (1988).

In this case, the lease agreement did not contain a provision by which Mr. Speight could terminate the lease or re-enter the premises for nonpayment of rent. Therefore, section 42-3 creates an implied "forfeiture of the term upon failure to pay the rent within 10 days after a demand is made . . . for all past-due rent." N.C. Gen. Stat. § 42-3. Mr. Speight demanded payment of all past-due rent in his answer, counterclaim, and cross-claim filed 27 July 2006. However, Mr. Gardner and Ebenezer argue that no rent was due under N.C. Gen. Stat. § 42-3 because Mr. Speight breached the terms of the lease when he failed to repair the fire damage, thereby entitling them to rent abatement. We disagree.

Our Legislature has recognized the mutuality of landlord and tenant lease obligations in the residential context under section 42-41 of our General Statutes, which states: "The tenant's obligation to pay rent under the rental agreement or assignment and to comply with G.S. 42-43 [tenant to maintain dwelling unit] and the landlord's obligation to comply with G.S. 42-42(a) [landlord to provide fit prem-

---

2. Section 42-26 allows for the removal of a tenant or lessee, and their assigns "(1) When a tenant in possession of real estate holds over after his term has expired; (2) When the tenant or lessee, or other person under him, has done or omitted any act by which, according to the stipulations of the lease, his estate has ceased; (3) When any tenant or lessee of lands or tenements, who is in arrear for rent . . . deserts the demised premises, and leaves them unoccupied and uncultivated." N.C. Gen. Stat. § 42-26 (2005).

ises] shall be mutually dependent." *Id. § 42-41.* However, no such mutuality has been recognized in commercial leases. Rather, in a commercial lease,

> [t]he duty of the tenant, if the landlord fails to perform his contract to repair, is to do the work himself, and recover the cost in an action for that purpose, or upon a counterclaim in an action for rent, or if the premises are made untenable by reason of the breach of contract, the tenant may move out and defend in an action for rent as upon an eviction.

*Cato Ladies Modes of North Carolina, Inc. v. Pope,* 21 N.C. App. 133, 135, 203 S.E.2d 405, 406 (1974) (citing *Jordan v. Miller,* 179 N.C. 73, 101 S.E. 550 (1919)).

Thus, where a landlord breaches his duty to repair in a commercial lease, the tenant may: (1) sue the landlord for damages equal to "the difference between the rental value of the premises for the term, in the condition as contracted to be, and the rental value in their actual condition," *Brewington v. Loughran,* 183 N.C. 558, 564, 112 S.E. 257, 259 (1922); (2) make the repairs and collect from the landlord the reasonable cost of such repairs, *Pope,* 21 N.C. App. at 135, 203 S.E.2d at 406; or (3) move out and claim constructive eviction. *Id.; see K & S Enter. v. Kennedy Office Supply Co., Inc.,* 135 N.C. App. 260, 266-67, 520 S.E.2d 122, 126 (1999) ("[C]onstructive eviction takes place when a landlord's breach of duty under the lease renders the premises untenable. A tenant seeking to show constructive eviction has the burden of showing that he abandoned the premises within a reasonable time after the landlord's wrongful act."), *aff'd,* 351 N.C. 470, 527 S.E.2d 644 (2000). Additionally,

> [a] subletting, although assented to by the lessor, does not in any way affect the liability of the original lessee on the covenants of the lease unless there is a surrender and substitution of tenants. The original lessee is responsible for any violation of the covenants of the lease by the sublessee.

*Dixie Fire & Cas. Co. v. Esso Standard Oil Co.,* 265 N.C. 121, 126, 143 S.E.2d 279, 283 (1965).

Here, rather than repairing the fire damage and recovering the costs from Mr. Speight, suing Mr. Speight for damages, or moving out and claiming constructive eviction, Ebenezer continued to occupy the premises but stopped paying rent to Mr. Gardner, who in turn stopped paying rent to Mr. Speight. Under our case law, Mr. Gardner

was obligated to continue paying rent regardless of Mr. Speight's failure to repair the fire-damaged property.

Although the fire occurred in October 2005 and Mr. Gardner continued paying rent to Mr. Speight through January 2006, Mr. Gardner failed to pay rent from 1 February 2006 through the date of the hearing, 16 January 2007. Accordingly, Mr. Gardner owed past-due rent to Mr. Speight. Pursuant to N.C. Gen. Stat. § 42-3, when Mr. Gardner failed to pay the past-due rent within ten days of 27 July 2006, the date Mr. Speight demanded payment of all past-due rent, forfeiture of the lease was implied. *See* N.C. Gen. Stat. § 42-3. Because Mr. Speight had a right to dispossess Mr. Gardner and Ebenezer under N.C. Gen. Stat. § 42-3, we cannot conclude that the trial court erred in granting summary ejectment in favor of Mr. Speight.

Affirmed.

Judges BRYANT and JACKSON concur.