DANIEL W. WILLIAMS, Petitioner v. N.C. DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT, Respondent

No. COA94-1108

(Filed 18 July 1995)

**Public Officers and Employees § 59 (NCI4th)— disabled employee terminated for just cause—exhaustion of vacation allowed in lieu of long-term disability benefits**

A disabled State employee who is terminated for just cause may elect, pursuant to N.C.G.S. Chapter 135, Article 6, to exhaust his accumulated vacation leave in lieu of receipt of his long-term disability benefits for the period of his accumulated vacation leave.

**Am Jur 2d, Civil Service §§ 48-50.**

Appeal by respondent from order entered 27 June 1994 in Wake County Superior Court by Judge Gregory A. Weeks. Heard in the Court of Appeals 5 June 1995.

*M. Jackson Nichols for petitioner-appellee.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Charles J. Murray, for the State.*

GREENE, Judge.

The North Carolina Department of Economic and Community Development (NCECD) appeals from an order of the trial court which reversed in part a decision of the State Personnel Commission (SPC).

NCECD dismissed Daniel W. Williams (Williams) from his position as Chief Helicopter Pilot and cited, as reason for the dismissal, failure to maintain a valid FAA license with the appropriate medical certification for operation of an airplane as a commercial

pilot. Pursuant to N.C. Gen. Stat. § 150B-23, Williams filed a petition with the Office of Administrative Hearings (OAH) for a contested case hearing, alleging that the NCECD wrongfully discharged him, in that his discharge was discriminatory because of his age, health status, political affiliation, and because he "raised questions about unsafe activities and improper operational procedures." Williams further alleged that NCECD denied his request to exhaust his "earned annual leave," an election Williams claims is available to him under Chapter 135.

An Administrative Law Judge (ALJ) was assigned to Williams' case, pursuant to N.C. Gen. Stat. § 150B-32 and made the following findings of fact, which were adopted by the SPC, and are not disputed by the parties:

7. [Williams] was employed as a helicopter pilot in the Executive Aircraft Operations (EAO) of [NCECD].

. . . .

10. On March 2, 1988, [Williams] had a physical examination at the Division of Occupational Medicine of the Duke University Medical Center, Durham, North Carolina in accordance with the usual procedure for the pilots of EAO.

11. On March 8, 1988[,] [Williams] suffered an attack of angina . . . .

12. On March 9, 1988, Dr. Locklear performed coronary artery bypass surgery on [Williams].

13. [Williams] went on sick leave starting March 8, 1988 and continued on such leave until October 17, 1988 when he started using his annual leave, resulting in [Williams] having 238 hours of accrued annual leave on December 31, 1988 to carry over to 1989. As of January 1, 1989 [Williams] went back on sick leave until August 18, 1989 when he switched to annual leave until his dismissal on September 22, 1989.

. . . .

16. At some time during the Spring of 1989, approximately one year after his surgery, [Williams] applied to the Federal Aviation Authority (FAA) for the issuance of a first class medical certificate.

[EAO pilots were required to hold a first class medical certificate, issued by the FAA.]

. . . .

31. On July 19, 1989, Dr. Broadwell [a Duke University Hospital doctor, who performs Duke's contract with the N.C. Department of Commerce for the examination of their pilots] wrote Roger Lowery [the Director of Flight Operations of EAO] informing him that the FAA had ruled [Williams] ineligible for either a first or second class medical certificate.

. . . .

34. On August 4, 1989, about two months prior to his dismissal, [Williams] submitted to the State Disability Office (SDO) a medical report signed by his physician, stating that [Williams] was totally and permanently disabled to perform his job as a pilot.

35. The Medical Review Board, which approves disability for state employees, accepted this determination.

36. On August 11, 1989, [Williams] executed a notarized application for long term disability.

37. That application was inadequate in that (a) it was not notarized and (b) it showed an incorrect benefit effective date of October 1, 1989.

38. The application was later resubmitted and the SDO subsequently changed the effective date of long-term disability benefits from October 1, 1989 to May 8, 1989.

. . . .

41. [Williams'] onset of disability was March 8, 1988. 60 days from March 8, 1988 was May 7, 1988. 365 days of short term disability benefits ended on May 7, 1989, and long term benefits could begin on the following day.

42. When [Williams] learned that his disability benefits date was not October 1, he decided not to go out on disability but to stay in his job.

43. After [Williams] decided to stay on the payroll, he sent a letter to [NCECD] requesting reasonable accommodation if they determined that he could not perform the duties of his position.

44. On September 22, 1989 [Williams] was called to a meeting in William Dunn's office. Mr. Dunn, who was the Deputy Directory of [NCECD], explained to [Williams] that [NCECD] needed to fill the pilot position and that if [Williams] refused to resign he would be terminated.

45. Mr. Dunn further stated that it would not be possible for him to be placed in another position and that without the proper medical certificate he could not fly for [NCECD].

46. Despite Mr. Dunn's urgings [Williams] continued to refuse to resign and Mr. Dunn issued a letter of dismissal stating that [Williams] was dismissed because he was unable to obtain the appropriate medical certification necessary for a commercial pilot's license.

47. [Williams] was given a letter of dismissal, with that dismissal effective September 22, 1989.

48. [Williams] then asked Director Dunn to keep him on the payroll through the remainder of his accrued annual leave. Since his leave would take him through October, he would earn additional sick and annual leave for the month of October.

49. Sadie Jackson, a personnel technician with [NCECD], testified, and it is found as fact, that [Williams] would have earned leave had he remained on salary continuation through the month of October.

50. [Williams] was not given salary continuation status.

51. At the time of his dismissal, [Williams] held neither a first, second, or third class medical certificate.

52. At the time of [Williams'] dismissal, he had 240 hours of annual leave accrued.

The ALJ recommended, pursuant to N.C. Gen. Stat. § 150B-34, that the NCECD's dismissal of Williams be upheld, and that:

2. . . . [NCECD] compensate [Williams] for the additional annual leave he would have accrued had he stayed on salary continuation through the end of his accrued annual leave.

The SPC adopted the ALJ's recommendation that Williams' dismissal be upheld and refused to follow the ALJ's recommendation number two. Thus, the SPC upheld the NCECD's dismissal of Williams

but denied him compensation for the additional leave he would have earned had he been allowed to remain on "salary continuation." Williams then filed a petition for judicial review, pursuant to N.C. Gen. Stat. § 150B-43. The trial court ordered that "[Williams] dismissal is upheld but [Williams shall] be compensated for the additional annual leave he would have accrued had he stayed on salary continuation through the end of his accrued annual leave." The trial court further ordered an award of attorney fees to Williams, as the prevailing party. NCECD appeals from this order.

We note that although Williams attempts to cross-assign error, only his first cross-assignment provides "an alternative basis in law for supporting the" trial court's order. We do not address this cross-assignment, however, because it is not set forth in the record on appeal. N.C.R. App. P. 9(a)(1)(k), 10(d); *see Cieszko v. Clark*, 92 N.C. App. 290, 294, 374 S.E.2d 456, 459 (1988). Because the arguments set forth in Williams' purported cross-assignments are reasons that the trial court's order upholding his dismissal should be reversed and do not provide "an alternative basis in law for supporting the" trial court's order, the proper method to raise these questions on appeal would have been a cross-appeal, *Cox v. Robert C. Rhein Interest, Inc.*, 100 N.C. App. 584, 588, 397 S.E.2d 358, 361 (1990), and his failure to appeal "waives our consideration on appeal." *In the Matter of Appeal from Civil Penalty*, 92 N.C. App. 1, 5-6, 373 S.E.2d 572, 575 (1988), *rev'd on other grounds*, 324 N.C. 373, 379 S.E.2d 30 (1989).

The issue is whether a disabled State employee who is terminated for just cause may elect, pursuant to Chapter 135, Article 6 of the North Carolina General Statutes, to exhaust his accumulated vacation leave in lieu of receipt of his long-term disability benefits for the period of his accumulated vacation leave.

The question involves an interpretation of statutes and thus, we review the SPC's decision *de novo*. See N.C.G.S. § 150B-51(b) (1991); *Brooks v. Ansco & Assocs.*, 114 N.C. App. 711, 716, 443 S.E.2d 89, 92 (1994) (allegation that agency decision is based upon an error of law requires *de novo* review); *Brooks, Comm'r of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 345 (1988) (allegation of error in interpreting statute is an allegation of an error of law).

A career State employee may be discharged for "just cause," N.C.G.S. § 126-35(a) (1993), which includes "[f]ailure to maintain"

such license, registration or certification as required by the employee's special position. N.C. Admin. Code tit. 25, r. IJ.0612(b) (December 1994). An eligible State employee who becomes disabled during his employment is entitled to receive disability benefits under Article 6, Chapter 135, known as the "Disability Income Plan of North Carolina" (DIP). The employee becomes eligible for these benefits after a waiting period of sixty days following the disability. N.C.G.S. § 135-104(a) (1994). "During this waiting period, [an employee] may be paid such continuation of salary as provided by an employer through the use of sick leave, vacation leave or any other salary continuation." *Id.* Following the waiting period, the employee may begin to receive short-term disability benefits for a period of 365 days, or "may elect to receive any salary continuation as provided in G.S. 135-104 in lieu of short-term disability benefits . . . ." N.C.G.S. § 135-105(b) (1994). Long-term disability benefits are not available until short-term benefits are concluded, N.C.G.S. § 135-106(a) (1994), and the employee "may elect to receive any salary continuation as provided in G.S. 135-104 in lieu of long-term disability benefits . . . ." N.C.G.S. § 135-106(b). Additionally, no disability payments will begin until the period covering any lump sum payout for accrued leave has expired. *Id.*

Once an eligible employee becomes disabled he is entitled to elect to receive, N.C.G.S. §§ 135-105(b), -106(b), as a form of disability payment, "salary continuation" which includes accumulated vacation leave. N.C.G.S. § 135-104(a). If the eligible employee's disability occurs before his termination, the employee is entitled to make his elections under DIP, whether that election occurs before or after his termination. *See* N.C.G.S. § 135-103(b)(1) (disabled employee may participate in DIP unless he is terminated prior to disability).

The undisputed findings of the Commission are that Williams was terminated on 22 September 1989, that he had been disabled since March of 1988 and that he had applied for long-term disability benefits on 11 August 1989. Those findings also reveal that at the same time NCECD terminated his employment, Williams requested that NCECD "keep him on the payroll through the remainder of his accrued . . . leave." Because Williams had submitted an application for long-term disability and requested that he remain on the payroll until his accrued leave was exhausted, his request is sufficient exercise of his right to take salary continuation as a form of long-term disability payments, and because Williams was disabled prior to his termination, the trial court correctly ordered that Williams be "compensated

for the additional annual leave he would have accrued had he stayed on salary continuation through the end of his accrued annual leave."

NCECD, relying on N.C. Gen. Stat. §§ 126-41, 6-19.1, also argues that because the trial court's partial reversal of the SPC's decision was in error, its award of attorney fees to Williams was also in error. Because we have determined that the trial court correctly reversed the SPC by awarding Williams additional compensation, we reject NCECD's argument.

Affirmed.

Judges JOHNSON and MARTIN, JOHN C., concur.