ARE-100/800/801 CAPITOLA, LLC, PLAINTIFF v. TRIANGLE LABORATORIES, INC., DEFENDANT

No. COA00-578

(Filed 19 June 2001)

**1. Landlord and Tenant— commercial—summary ejectment— jurisdiction**

A district court had subject matter jurisdiction over a summary ejectment proceeding involving a commercial tenant despite defendant's argument that Chapter 42, Article 3 of the North Carolina General Statutes applies to residential tenants. N.C.G.S. § 42-26.

**2. Landlord and Tenant— summary ejectment—late fees and repairs—failure to pay rent**

The trial court was not precluded from granting summary judgment for plaintiff landlord in a summary ejectment action involving a commercial tenant where defendant contended that there were issues of fact involving late fees and repairs but did not deny that it failed to pay the rent. Whether the late fees were incorrect goes to the amount owed and not whether defendant failed to pay rent, and, while defendant might be entitled to an offset if it expended monies to repair the property, plaintiff's failure to make repairs does not alleviate defendant's obligation to pay rent.

ARE-100/800/801 CAPITOLA, LLC v. TRIANGLE LABS., INC.

[144 N.C. App. 212 (2001)]

**3. Landlord and Tenant— constructive eviction—possession of property**

The trial court was not precluded from granting summary judgment for plaintiff landlord in a summary ejectment action involving a commercial tenant where defendant contended that there was a genuine issue of material fact involving constructive eviction, but defendant did not abandon the property and sought to remain in possession pending disposition on appeal.

**4. Landlord and Tenant— summary ejectment-termination of estate—notice according to lease**

The trial court erred by granting summary judgment for plaintiff landlord in a summary ejectment action where plaintiff did not terminate defendant's estate according to the lease. When the termination of a lease depends upon notice, the notice must be given in strict compliance with the contract as to both time and contents.

**5. Appeal and Error— cross-assignment of error—properly a cross-appeal—not considered**

The Court of Appeals did not consider a cross-assignment of error arising from a summary ejectment where the supporting arguments did not provide an alternative basis in law for supporting the judgment and should have been raised in a cross-appeal.

Judge CAMPBELL concurs in part and dissents in part.

Appeal by defendant from order filed 11 February 2000 by Judge Marcia H. Morey in Durham County District Court. Heard in the Court of Appeals 27 March 2001.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for plaintiff-appellee.*

*William G. Goldston for defendant-appellant.*

GREENE, Judge.

Triangle Laboratories, Inc. (Defendant) appeals a judgment filed 11 February 2000 awarding summary judgment (the judgment) in favor of ARE-100/800/801 Capitola, LLC (Plaintiff). Plaintiff cross-assigns error to an order filed 6 April 2000 staying execution of the judgment pending disposition of the appeal of the judgment.

On 14 June 1995, Defendant, as tenant, entered into a lease agreement with ATP Properties Limited Partnership, J. Allen Yager and wife, Hilda Yager, as landlords (the Lease), to lease property located at 801 Capitola Drive, Durham (the Property).[1] The Lease provided Defendant would use the Property for "general office, laboratory, research and development purposes."

Pursuant to the Lease, Defendant was to pay a monthly minimum rent on a square foot basis "without demand and without counterclaim, deduction[,] or set-off, . . . payable on or before the first day of each calendar month." An "[e]vent of [d]efault" under the Lease included Defendant's failure "to pay any rent including additional rent within 3 business days after notice of its failure to do so from [Plaintiff] provided [Plaintiff] shall not be required to so notify [Defendant] for such failure more than three times in any twelve month period." Upon the occurrence of an "[e]vent of [d]efault," Plaintiff had the right, by written notice to Defendant to: re-enter the Property and remove Defendant and its belongings from the Property; terminate the Lease; or terminate Defendant's possession of the Property. If the term of the Lease was not specifically terminated in writing, the parties were to assume Plaintiff had "elected to terminate possession only, without terminating the term." If Plaintiff chose to only terminate possession of the Property, Defendant's "obligations to pay rent or any other sums due for the remainder of the Lease" remained unaffected.

The Lease obligated Plaintiff to: furnish the Property "hot and cold water, electricity for normal general office use, [and] removal of trash from site dumpsters"; maintain and repair "the roof and structural portions" of the Property; replace "any complete mechanical system" if the components could not be replaced or repaired by Defendant; and "replace or to make any and all repairs to any mechanical system." If Plaintiff defaulted or failed to perform its obligations under the Lease, Defendant was to notify Plaintiff and give Plaintiff a reasonable opportunity to cure the default. If Plaintiff failed to cure the default, Defendant had the option of expending reasonable sums to cure Plaintiff's default and "offset such sums against the payment of rent."

The Lease was amended on 10 February 1997 to allow Defendant an opportunity to correct a default for failure to pay rent. The amend-

---

1. Plaintiff is the successor in interest to ATP Properties Limited Partnership, J. Allen Yager and Hilda Yager with respect to the Lease.

ment to the Lease provided Defendant was to pay Plaintiff $179,825.56 for failure to pay rent. In a letter dated 27 July 1999, Plaintiff informed Defendant that pursuant to the Lease, Defendant was in default by failing to pay the monthly rent and related charges. Plaintiff requested Defendant "remit immediate payment in the amount of $59,705.54" and if payment was not received in accordance with the Lease, Plaintiff would "immediately initiate curative remedies' under the Lease and the law." In a letter dated 13 October 1999, Plaintiff informed Defendant that Plaintiff had not "received payment of rent obligations due under the terms of the Lease for October 1999 and other rents dating back over 150 days." Plaintiff requested Defendant immediately cure the default and remit payment in the amount of $178,950.90 or Plaintiff would "immediately initiate curative remedies under the Lease and the law." In a letter dated 10 November 1999, Plaintiff again informed Defendant that Plaintiff had "not received payment of rent obligations due under the terms of the Lease for November 1999 and other rents dating back over 150 days." Plaintiff requested Defendant remit payment in the amount of $236,172.80 or Plaintiff would "immediately initiate curative remedies under the Lease and the law."

On 30 November 1999, Plaintiff filed a complaint for summary ejectment of Defendant. Plaintiff stated Defendant breached the Lease by failing to "pay rent within three business days after three demands" upon Defendant within one year. On 13 December 1999, a Durham County magistrate ordered Defendant be removed from the Property and Plaintiff be put in possession of the Property. On 23 December 1999, Defendant appealed *de novo* to the district court for a jury trial. Plaintiff filed a motion for summary judgment on 24 January 2000. In the sworn affidavit of J. Ronald Hass (Hass), CEO and President of Defendant, Defendant admitted it had not paid rent because Defendant felt it was being overcharged and Plaintiff was not fulfilling its obligations under the Lease. The trial court granted Plaintiff's motion for summary judgment on 11 February 2000, concluding the trial court had subject matter jurisdiction over the summary ejectment and Plaintiff was entitled to judgment as a matter of law.

On 10 March 2000, Defendant moved the trial court to stay execution of the judgment pending disposition of appeal to this Court. The trial court granted Defendant's motion to stay execution of the judgment on 6 April 2000, and found as fact that Defendant had made monthly rental payments to Plaintiff since 23 December 1999. The

trial court imposed the following conditions on Defendant pending disposition of appeal:

> (1) that Defendant shall commit no waste upon the [Property] . . . ; (2) that Defendant shall continue to make monthly rental payments to Plaintiff in the amount of $48,130.07, to be paid to the Clerk of Durham County Superior Court, on or before the 5th day of each month henceforth through and including July[] 2000; (3) that between July 6, 2000 and August 1, 2000, Defendant shall obtain a surety for the purpose of posting a bond equal to double the sum of $240,000 which would be the amount of rent due on the remainder of the [L]ease which expires on December 31, 2000, or in the alternative, Defendant may comply with this condition by posting $240,000 with the Clerk of Superior Court on or before August 1, 2000.

---

The issues are whether: (I) a district court has subject matter jurisdiction with regard to the summary ejectment of a commercial tenant; (II) genuine issues of material fact exist concerning Defendant's failure to pay rent pursuant to the Lease; and (III) Plaintiff's letter indicating it would "initiate curative remedies" terminated Defendant's leasehold estate.

I

[1] Defendant argues the trial court erred in granting Plaintiff's motion for summary judgment because Chapter 42, Article 3 of the North Carolina General Statutes applies to residential tenants, and, thus, the trial court was without subject matter jurisdiction. We disagree.

A trial court conducting a summary ejectment proceeding obtains its jurisdiction from N.C. Gen. Stat. § 42-26 and in order to have such jurisdiction, there must be a landlord-tenant relationship and one of the three statutory violations in section 42-26 must have occurred. *Hayes v. Turner*, 98 N.C. App. 451, 454, 391 S.E.2d 513, 515 (1990). Chapter 42, Article 2A of the North Carolina General Statutes provides limitations on ejectment of residential tenants. *See* N.C.G.S. § 42-25.6 (1999). Article 3, however, has been applied to summary ejectment of commercial tenants. *See Holly Farms Foods, Inc. v. Kuykendall*, 114 N.C. App. 412, 414, 442 S.E.2d 94, 96 (1994); *see also Chrisalis Properties, Inc. v. Separate Quarters, Inc.*, 101 N.C. App. 81, 84, 398 S.E.2d 628, 631-32 (1990), *disc. review denied*, 328 N.C. 570, 403 S.E.2d 509 (1991).

In this case, the trial court had subject matter jurisdiction over the summary ejectment proceedings. Defendant is a commercial tenant and Plaintiff is the landlord. In addition, one of three statutory violations listed in section 42-26 has occurred: Defendant failed to pay rent. Accordingly, the trial court did not err in exercising jurisdiction in this summary judgment action.

## II

[2] Defendant next argues the trial court erred in granting Plaintiff's motion for summary judgment because genuine issues of fact existed concerning Plaintiff's overcharge for late fees, damages to Defendant's business, and Plaintiff's constructive eviction of Defendant. We disagree.[2]

A motion for summary judgment is properly granted "where there is no genuine issue as to any material fact." *Johnson v. Trustees of Durham Technical Community College*, 139 N.C. App. 676, 680, 535 S.E.2d 357, 361, *appeal dismissed and disc. review denied*, 353 N.C. 265, —— S.E.2d —— (2000).

### Overcharge of late fees

In this case, the evidence viewed in the light most favorable to Defendant, *see Wrenn v. Byrd*, 120 N.C. App. 761, 763, 464 S.E.2d 89, 90 (1995) (must view evidence in light most favorable to non-moving party on motion for summary judgment), *disc. review denied*, 342 N.C. 666, 467 S.E.2d 738 (1996), reveals no genuine issue of fact as to Defendant's failure to timely pay rent. Defendant argues there is a dispute about the amount of the late charge Plaintiff assessed Defendant; Defendant, however, does not deny it has failed to pay rent. Indeed, Hass, in his affidavit, admits Defendant had failed to pay rent. Accordingly, whether or not Plaintiff has assessed Defendant an incorrect late fee goes to the amount of money Defendant owes to Plaintiff and not to whether Defendant has failed to pay rent.

### Plaintiff's failure to make repairs

Additionally, Defendant argues Plaintiff's failure to make repairs to the Property entitles Defendant to an offset on the amount of rent.

---

2. Defendant also argues that a genuine issue of fact exists as to whether it is actually in default on the rental payments in light of North Carolina's Residential Rental Agreements Act, codified at N.C. Gen. Stat. Chapter 42, Article 5. The Residential Rental Agreements Act, however, only applies to dwellings used for residential purposes. *See* N.C.G.S. § 42-38 (1999); *see also* N.C.G.S. § 42-40(2) (1999). Thus, Defendant, as a commercial tenant, is not protected by the Residential Rental Agreements Act.

The Lease requires that in order for Defendant to be entitled to an off-set, Defendant must expend reasonable sums to cure Plaintiff's default. In this case, Defendant has not shown it expended any monies to repair the Property. In any event, even if Defendant had expended monies to repair the property, this would offset a portion of the rent and does not address Defendant's failure to pay rent or to notify Plaintiff of the offset. Accordingly, Plaintiff's failure to make certain repairs does not alleviate Defendant of its obligation to pay rent, thus, no genuine issue of fact exists as to Defendant's default under the Lease.[3]

### Constructive eviction

[3] Defendant next argues a genuine issue of fact exists as to whether Plaintiff constructively evicted Defendant by Plaintiff's failure to make repairs. A tenant, who seeks to establish constructive eviction, "has the burden of showing . . . he abandoned the premises within a reasonable time after the landlord's wrongful act." *K&S Enters. v. Kennedy Office Supply Co., Inc.*, 135 N.C. App. 260, 266, 520 S.E.2d 122, 126 (1999), *affirmed*, 351 N.C. 470, 527 S.E.2d 644 (2000). In this case, Defendant has failed to show he abandoned the Property. Indeed, Defendant sought to remain in possession of the Property pending disposition of this case before this Court. Thus, as Defendant did not abandon the Property, Defendant cannot withhold rental payments and claim constructive eviction. *See Thompson v. Shoemaker*, 7 N.C. App. 687, 690, 173 S.E.2d 627, 630 (1970) ("it would be grossly unjust to permit a tenant to continue in possession of premises and shield himself from payment of rent by reason of alleged wrongful acts of the landlord"), *superseded by statute on other grounds, Miller v. C.W. Myers Trading Post, Inc.*, 85 N.C. App. 362, 368, 355 S.E.2d 189, 193 (1987). Accordingly, there are no genuine issues of material fact concerning Defendant's failure to pay rent.

### III

[4] Defendant finally argues that the trial court erred in granting Plaintiff's motion for summary judgment because Plaintiff failed to terminate Defendant's estate. We agree.

North Carolina General Statutes permit a landlord to seek summary ejectment when "the tenant . . . has done or omitted any act by

---

3. We note the Lease also requires Defendant to pay rent "without demand and without counterclaim, deduction[,] or set-off."

which, according to the stipulations of the lease, his estate has ceased." N.C.G.S. § 42-26(2) (1999). Under section 42-26(2), a breach of a lease cannot be made the basis for summary ejectment unless the lease provides for termination upon such a breach or reserves the right of reentry for such a breach. *Stanley v. Harvey,* 90 N.C. App. 535, 537, 369 S.E.2d 382, 384 (1988). When the termination of a lease depends upon notice, "the notice must be given in strict compliance with the contract as to both time and contents." *Id.* at 539, 369 S.E.2d at 385.

In this case, the Lease provides that if Defendant defaulted, Plaintiff had the option, by written notice to Defendant, to re-enter the Property, terminate the Lease, or terminate Defendant's possession of the property. Plaintiff's written notices to Defendant merely indicate Plaintiff will "initiate curative remedies under the Lease and the law." None of Plaintiff's three notices of default to Defendant. state that Plaintiff intends to re-enter the Property, terminate the Lease, or terminate Defendant's possession of the Property as required by the Lease. Also, Plaintiff's letters to Defendant did not provide clear and unequivocal notice to Defendant that Plaintiff was terminating Defendant's estate. Plaintiff, therefore, had no authority under the Lease to proceed with the summary ejectment proceeding without Defendant's estate ceasing. Accordingly, the trial court erred in granting Defendant's motion for summary judgment.[4]

**[5]** Plaintiff cross-assigns error to the trial court's order staying execution of the judgment pending appeal. Plaintiff's arguments concerning its cross-assignment of error are reasons the trial court erred in staying execution of the judgment and those reasons do not provide "an alternative basis in law for supporting" the judgment. The proper method to raise these arguments would have been a cross-appeal. *See Williams v. N.C. Dept. of Economic and Community Development,* 119 N.C. App. 535, 539, 458 S.E.2d 750, 753 (1995); *see also* N.C.R. App. P. 10(d). Accordingly, Plaintiff's failure to appeal the trial court's order waives this Court's consideration of the matter on appeal. *Id.*

---

4. Plaintiff argues because it did not specifically terminate the Lease, its notices to Defendant were to be construed as terminating Defendant's possession. Plaintiff, however, had several options provided by the Lease upon default by Defendant. All of these options required Plaintiff to provide Defendant with written notice of Plaintiff's option. As Plaintiff's notices did not indicate which option it was exercising, Plaintiff's notices are insufficient to terminate Defendant's estate.

Reversed.

Judge McGEE concurs.

Judge CAMPBELL concurs in part and dissents in part with separate opinion.

CAMPBELL, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority opinion on the issue of whether plaintiff terminated defendant's leasehold estate, thereby allowing plaintiff to bring an action for summary ejectment.

With respect to Part III of the majority opinion, I agree that under N.C. Gen. Stat. § 42-26(2), a breach of a lease cannot be made the basis for summary ejectment unless the lease provides for termination upon such a breach or reserves the right of re-entry for such breach. *Morris v. Austraw*, 269 N.C. 218, 222, 152 S.E.2d 155, 159 (1967). The majority concedes that the lease in the instant case provides for the right to "terminate the Lease, or terminate the Defendant's possession of the property."

The majority holds in footnote 4 that because "Plaintiff's notices did not indicate which option it was exercising, Plaintiff's notices are insufficient to terminate Defendant's estate." I disagree.

The record in the instant case indicates that the parties entered into a 32-page (plus 7 pages of exhibits) commercial lease ("the Lease") whereby defendant-Tenant ("defendant") agreed to pay plaintiff-Landlord ("plaintiff") a monthly minimum rent on a square foot basis ("base rent") plus common area maintenance ("CAM") charges "without demand and without counterclaim, deduction or set-off." The Lease was entered into as of 14 June 1995. On 10 February 1997, the parties entered into a formal lease amendment wherein they agreed that defendant was then in default for failure to pay rent but that defendant was given an opportunity to cure in accordance with the terms and conditions outlined therein. The parties agreed that the total amount owing at that time was $179,825.56 which was to be paid in accordance with a payment schedule attached to the lease amendment. Other than the changes made by the amendment, all of the terms of the Lease were to remain in full force and effect.

Section 26(a)(i) of the Lease made defendant's failure "to pay rent including additional rent within 3 business days after notice of

ARE-100/800/801 CAPITOLA, LLC v. TRIANGLE LABS., INC.

[144 N.C. App. 212 (2001)]

its failure to do so from Landlord" an "Event of Default." Upon any such "Event of Default," Section 26(b) of the Lease entitled plaintiff, upon written notice to defendant, to:

> (i) re-enter the Demised Premises and correct or repair any condition which shall constitute a failure on Tenant's part to perform or abide by the terms of this Lease, . . . and (ii) re-enter the Demised Premises and remove therefrom Tenant and all property belonging to or placed on the Demised Premises by, or at the direction of, Tenant, and place or store such Tenant property . . . and [Landlord] shall be further entitled to either (x) to terminate the term hereof or (y) to terminate Tenant's right to possession or occupancy only, without terminating the term of this Lease Agreement. *Unless the term is specifically terminated by notice in writing, it shall be assumed that the Landlord has elected to terminate possession only, without terminating the term.*

(Emphasis added). Pursuant to this provision, upon any "Event of Default," plaintiff had the following options: (1) terminate the remainder of the Lease; (2) exercise its reserved right of re-entry to terminate defendant's right to possession of the property; or (3) ignore the default and do nothing. Further, the parties agreed, as part of the Lease, that if plaintiff's written notice to defendant under Section 26(b) did not specifically terminate the Lease, then it was to be assumed that plaintiff had elected to exercise its right of re-entry.

On three separate occasions[5] in a three-and-a-half month span, plaintiff sent defendant written notice informing defendant that it was in default of the Lease pursuant to Section 3 ("Covenant to Pay Rent") and Section 26 ("Events of Default"). Each of these notices demanded that defendant immediately cure default by payment of the past due amount, and warned defendant that "[i]f payment is not received in accordance with the Lease, the Landlord will immediately initiate curative remedies under the Lease and the law."

---

5. In addition to these three occasions (letters dated 27 July 1999; 13 October 1999 and 10 November 1999), there was evidence of at least two prior defaults by tenant: (1) an amendment to the Lease by a Letter Agreement dated 24 July 1996, where the Tenant acknowledged an indebtedness of past due rent to the Landlord and agreed to a payment schedule to retire this indebtedness and (2) the Lease Amendment dated 10 February 1997 wherein the Tenant acknowledged that it was in default under both the Lease and the Letter Agreement and agreed to make past due rent payments for December 1996 and January 1997, and made acknowledgment of an indebtedness due the Landlord in the amount of $179,825.56. Except as specifically modified by the Lease Amendment, the Lease (including all default provisions) remained in full force and effect.

There is no question that defendant's repeated failure to pay rent after having been notified by plaintiff that it was past due constitutes an "Event of Default" under Section 26(a)(i) of the Lease. There is likewise no question that Section 26(b) of the Lease gives the plaintiff the option either to terminate the Lease upon an event of default (i.e. breach of the Lease), or to exercise its reserved right of re-entry and to terminate defendant's right to possession or occupancy, so long as defendant is given written notice. The only question, and the issue on which I disagree with the majority opinion, is whether plaintiff's warning that "[i]f payment is not received in accordance with the Lease, the Landlord will immediately initiate curative remedies under the Lease and the law," was sufficient to cause defendant's leasehold estate to have "ceased" under G.S. § 42-26(2). I believe that it was.

The majority opinion relies on this Court's decision in *Stanley v. Harvey*, 90 N.C. App. 535, 369 S.E.2d 382 (1988), to support its conclusion that plaintiff's written notices to defendant "did not provide clear and unequivocal notice to Defendant that Plaintiff was terminating Defendant's estate." While I agree with the decision reached in *Stanley*, I believe the majority's reliance upon it in the instant case is misplaced for the following reasons.

First, the lease in *Stanley* did not provide for a right of re-entry to terminate possession. The only way the lessor in *Stanley* could cause the lessee's estate to "cease" was to terminate the lease altogether. The Court in *Stanley* held that the notice to vacate the premises was not a clear and unequivocal notice that the lease was to be terminated, since the lessee could arguably refuse such request to vacate because the lease did not provide for an automatic right of re-entry. However, in the instant case plaintiff did not attempt to terminate the Lease, instead choosing to rely on the parties agreed upon assumption that its written notices constituted an election to exercise its reserved right of re-entry to terminate defendant's possession. Since plaintiff was not attempting to terminate the Lease, the holding in *Stanley* is not controlling.

Second, the lease in *Stanley* was a residential lease, whereas the parties in the instant case had entered into a commercial lease with detailed provisions concerning the rights of the parties upon default. It should be presumed that the parties who have entered into a commercial lease have negotiated at arm's length and understand the results of their negotiations as memorialized in their written lease agreement. Thus, I do not believe the defendant in the instant case

misunderstood the notices it received from plaintiff. Defendant must have understood the provision in Section 26 of the Lease setting out the assumption that written notice from plaintiff which did not specifically terminate the Lease was an election by the plaintiff to terminate possession only. Allowing the commercial lessor to go forward with summary ejectment in a situation such as this is consistent with the agreement that the parties had entered into. Thus, I believe plaintiff met the required obligations for it to institute a summary ejectment action.

For the foregoing reasons, although I concur with Parts I, II, and that portion of Part III dealing with plaintiff's cross-assignment of error, I respectfully dissent from that portion of Part III of the majority opinion holding that plaintiff failed to effectively terminate defendant's leasehold estate. I would, therefore, affirm the trial court's grant of summary judgment for plaintiff.