HENRY G. LEWIS, Plaintiff v. CHARLES K. EDWARDS, Defendant

No. COA00-1190

(Filed 6 November 2001)

**1. Partnerships— modification of agreement—acceptance of other employment**

The trial court did not err in an action arising from the dissolution of a partnership tried without a jury by concluding that defendant was not entitled to damages for plaintiff's breach of the partnership agreement in accepting other employment while still a partner where the evidence showed both consent and consideration, so that a new agreement was produced by the parties.

**2. Partnerships— dissolution—rent**

The trial court erred in an action arising from the dissolution of a partnership tried without a jury by awarding plaintiff rent through the entire month of July where the record shows that defendant obtained ownership of the building on 9 July.

**3. Partnerships— dissolution—collection of debts**

The trial court erred in an action arising from the dissolution of an accounting partnership tried without a jury by finding that

defendant had collected $18,000 from JFJ where the record shows that defendant only received about $13,317.65.

**4. Partnerships— dissolution—interest**

The trial court in an action arising from the dissolution of an accounting partnership tried without a jury did not err by awarding plaintiff interest on a judicial award from the date the partnership dissolved. The business of the partnership was continued by defendant without liquidation of partnership affairs and plaintiff was thus entitled by N.C.G.S. § 59-72 to receive interest on the value of his share of the partnership from the date of dissolution. While N.C.G.S. § 24-5(b) generally provides interest from the date of entry of judgment, the more specific statute controls.

**5. Partnerships— dissolution—payment of debts from individual funds**

The trial court erred in an action arising from the dissolution of a partnership tried without a jury by not considering the parties' adjustments to the final valuation for the payment of partnership liabilities from individual funds.

**6. Appeal and Error— cross-assignment of error—improper**

A plaintiff's argument on appeal was waived where plaintiff cross-assigned error to a trial court's order but the proper method of raising the arguments would have been by a cross-appeal. Plaintiff argued reasons the trial court erred in its findings of fact and conclusions of law, but those reasons do not provide an alternative basis in law for supporting the judgment.

Appeal by defendant from order filed 11 May 1999 by Judge Robert F. Floyd, Jr. and from order and judgment filed 17 March 2000 by Judge William C. Gore, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 11 September 2001.

*Parker, Poe, Adams & Bernstein L.L.P., by R. Bruce Thompson, II, for plaintiff-appellee.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, PLLC, by Jim Wade Goodman, for defendant-appellant.*

GREENE, Judge.

Charles K. Edwards (Defendant) appeals an order filed 11 May 1999 determining the value of a partnership and an order filed 17

March 2000 directing Defendant to pay Henry G. Lewis (Plaintiff) a total of $157,414.99 for Plaintiff's one-half interest in a partnership between Plaintiff and Defendant.

Defendant and Plaintiff were the sole partners of Edwards & Lewis, CPAs (the Partnership), a professional certified public accounting practice in Lumberton, North Carolina. Plaintiff and Defendant entered into a partnership agreement (the agreement) on 1 June 1978 that included a provision for the duties of the partners (the Partnership duties):

> Each partner shall devote full working time to [the P]artnership affairs and shall not accept full, or regular parttime, employment from any other source nor engage in any other business other than investment and management of his own funds without first obtaining the agreement of the other party, and notwithstanding such agreement, if the other partner so demands, any and all salaries received thereafter from such employment shall be charged against the pro-rata share of net income to which such employed partner is entitled to receive.

The Partnership was primarily located at 304 East 5th Street in Lumberton (the 5th Street building). The 5th Street building was owned by E&L Rentals, a separate general partnership between Defendant and Plaintiff, from 1985 until 9 July 1999. Tax returns filed by the Partnership indicate the Partnership paid E&L Rentals $2,500.00 per month for rent.

In December 1995, Plaintiff decided he no longer wanted to be actively involved in the Partnership and obtained employment at Ted Parker Home Sales, Inc. (Ted Parker) as its Chief Executive Officer. The parties agreed Defendant would be the managing partner of the Partnership and would be compensated an additional $2,000.00 per week for his increased responsibilities of managing the Partnership. Plaintiff began his employment with Ted Parker on 1 January 1996.

In a letter dated 8 April 1996, Plaintiff informed Defendant of Plaintiff's "intent to dissolve the [P]artnership effective May 1, 1996." Plaintiff also requested Defendant inform him as to whether Defendant intended to continue operating as a sole practitioner and whether Defendant intended to continue utilizing the 5th Street building and the equipment and other assets of the Partnership. In his

**LEWIS v. EDWARDS**

[147 N.C. App. 39 (2001)]

response letter dated 26 April 1996, Defendant indicated he would "continue in public accountancy as a sole practitioner" at the 5th Street building.

A year after the date of dissolution of the Partnership Defendant had not formally accounted to Plaintiff for Plaintiff's share in the assets of the Partnership. On 9 May 1997, Plaintiff filed a complaint against Defendant requesting: Defendant be required to account for the Partnership's property and earnings retained by Defendant, as required by the agreement or N.C. Gen. Stat. §§ 59-52 and 59-68(a);[1] Plaintiff recover from Defendant Plaintiff's share of the Partnership's property and earnings; and Plaintiff recover interest, including pre-judgment interest. In Defendant's answer and counterclaim, he denied the allegations of Plaintiff's complaint and counterclaimed for Plaintiff's alleged breach of the Partnership duties, alleged breach of fiduciary duty, violation of the Trade Secrets Protection Act, and unfair and deceptive trade practices. In an amended complaint filed 1 June 1998, Plaintiff sought damages for Defendant's alleged: negligence and breach of the Partnership duties; breach of fiduciary duty; and unfair and deceptive trade practices. Defendant filed an amended counterclaim and answer specifically pleading unclean hands as a defense to Plaintiff's allegations concerning Defendant's breach of fiduciary duty. Defendant also counterclaimed for: a declaratory judgment on Plaintiff's claim for a judicial accounting; unjust enrichment; and interference with prospective economic advantage.

On 21 May 1998, Plaintiff moved for partial summary judgment on Plaintiff's entitlement to an accounting of the Partnership and Defendant's causes of action for an alleged violation of the Trade Secrets Protection Act and alleged unfair and deceptive trade practices. Plaintiff also requested that all other issues be stayed until completion of the accounting. On 7 July 1998, Judge Dexter Brooks (Judge Brooks) granted Plaintiff's motion for summary judgment on Defendant's claim under the Trade Secrets Protection Act and on Defendant's claim for unfair and deceptive trade practices. Judge Brooks further held Plaintiff was entitled to summary judgment on his claim seeking an accounting for the Partnership assets, and all

---

1. Although Plaintiff alleged the accounting of the Partnership's assets should occur pursuant to the agreement, the agreement only provides a formula for the accounting of the Partnership upon the withdrawal of one partner and the remaining partner deciding not to dissolve the Partnership. That formula, however, is not applicable in this case because both parties decided to dissolve the Partnership.

**LEWIS v. EDWARDS**

[147 N.C. App. 39 (2001)]

other issues should be stayed pending the completion of the accounting of the Partnership.[2]

On 20 July 1998, a hearing began on Plaintiff's claim for an accounting of the Partnership. During the presentation of Defendant's evidence, Judge Stafford G. Bullock (Judge Bullock) found the accounting of the Partnership required "the examination of a long, complicated account" and concluded "that a reference is necessary" to complete the accounting. In an order filed 21 September 1998, Judge Bullock ordered a reference for an accounting of the value of the Partnership as of 1 May 1996.

On 9 and 10 November 1998, the reference hearing was conducted by Robert N. Pulliam (Pulliam), a Certified Public Accountant and Accredited in Business Valuations. Pulliam found as fact:

1 The accounting records maintained by the Partnership subsequent to May 1, 1996 are not credible as to accuracy. Billings and collections were commingled by . . . Defendant with his subsequent proprietorship thereby making it impossible to identify separate distinguishable values for accounts receivable and work in process.

. . . .

4. Intangible assets (goodwill) is agreed to by the parties to have a value of zero.

. . . .

6. . . . The value of the assets, less liabilities of [the Partnership] as of May 1, 1996 is $176,070.52.

Pulliam also found that the methodology for dissolution of the Partnership contained in the agreement was based on a "rule of thumb," more appropriate to "measure the CPA practice operating as a **going concern with measurable goodwill**," which was not applicable in this case. Both parties objected to Pulliam's report and his valuation of the Partnership.[3] In an order filed 11 May 1999, Judge

2. Defendant did not appeal the order of Judge Brooks granting Plaintiff's motion for summary judgment on: Defendant's Trade Secrets Protection Act claim; Defendant's unfair and deceptive trade practices claim; or Plaintiff's claim seeking an accounting for the Partnership assets.

3. Defendant conceded in oral argument before this Court that he does not quarrel with the value of the Partnership as determined by Pulliam.

Robert F. Floyd, Jr. (Judge Floyd) concluded the value of the Partnership was $176,070.52 as of 1 May 1996 and adopted Pulliam's report, including the methodology used for the valuation of the Partnership.[4] Judge Floyd further concluded:

> Nothing else appearing, Plaintiff would be entitled to receive $88,035.26, plus appropriate interest, on his first claim for relief. However, each party reserves its rights in further proceedings in this matter to prove that he has paid from his individual funds partnership liabilities existing at May 1, 1996, or that the [P]artnership has, since May 1, 1996, paid for the benefit of either party any amount that was not a liability of the Partnership at May 1, 1996, or that any other adjustments are appropriate.

A bench trial was held on the remaining claims of Plaintiff and Defendant on 1-3 November 1999 before Judge William C. Gore, Jr. (Judge Gore). At the trial, Plaintiff presented exhibit 66 which showed Defendant had collected approximately $13,317.65 in payments from JFJ, a client of the Partnership. Plaintiff also presented exhibit 71-A (exhibit 71-A), a computation of the adjusted value of the Partnership and the amounts owed to Plaintiff. Exhibit 71-A adjusted the value of the Partnership, as determined by Pulliam, to include debts paid by the parties after 1 May 1996. Exhibit 71-A included amounts Plaintiff paid for storage of the Partnership's files, amounts paid to Kinlaw Chiropractor, and amounts due to Plaintiff for rental of the 5th Street building. Exhibit 71-A also made adjustments to Plaintiff's interest in the Partnership for disbursements made for the benefit of Plaintiff including amounts paid to: Jean Lamb; E&L Rentals from the Partnership's BB&T account (BB&T); Robesonian from BB&T; E&L Rentals from the Partnership's UCB account; Plaintiff's country club dues; taxes paid for Plaintiff; and insurance paid for Plaintiff. In Plaintiff's exhibit 71-B (exhibit 71-B), Plaintiff made adjustments to exhibit 71-A showing the subtraction of monies paid for rent from E&L Rentals as well as payment on BB&T's line of credit. Exhibit 71-A also adds payments from E&L Rentals.

Defendant's exhibit 109 (exhibit 109) adjusted the value of the Partnership as determined by Pulliam to include distributions for the parties' joint benefit. Defendant added to Plaintiff's one-half interest sums including: E&L Rentals' contribution to "FUNB Bank Principal"; E&L Rentals' contribution to BB&T Note; personal contributions to

---

4. Plaintiff did not appeal Judge Floyd's order accepting the methodology used by Pulliam for valuation of the Partnership.

**LEWIS v. EDWARDS**

[147 N.C. App. 39 (2001)]

BB&T Note; and half the value of the Partnership's furniture, equipment, and supplies. Defendant, however, subtracted from Plaintiff's interest sums including: payments for country club dues; payments for tax filings; payments for insurance; interest on BB&T note; and bank charges.

At the conclusion of trial, Judge Gore entered an order and found as fact, in pertinent part:

10. The Court finds that [the Partnership duties] w[ere] modified by the conduct of the parties and that, through that conduct, [Defendant] waived his right to enforce the provisions of the [agreement] relating to outside employment by [Plaintiff]. Specifically, [Plaintiff] and [Defendant] agreed that, beginning January 1, 1996, when [Plaintiff] began his work with Ted Parker, [Defendant] would receive an additional $2,000.00 per week in guaranteed compensation from the . . . Partnership.

11. [Defendant] was in fact paid $2,000 per week for the time period January 1, 1996 through April 30, 1996 from [the] Partnership assets. [Plaintiff's] acceptance of a salary from Ted Parker and his failure to disclose the same to [Defendant] was not a breach of fiduciary duty because of this modification of the . . . [a]greement and the extra compensation paid from the [P]artnership assets to [Defendant].

. . . .

14. [Plaintiff's] leaving to work for Ted Parker, the . . . Partnership's largest client, did adversely affect the . . . Partnership. However, in agreeing to accept $2,000 per week, [Defendant] agreed to this, there is no cause of action based on that conduct and [Defendant] is not entitled to any damages as a result of [Plaintiff's] conduct in leaving to take another job.

. . . .

20. The Court likewise finds that [Defendant's] mailing statements to the . . . Partnership's clients on his personal letterhead after the date of dissolution was not in good faith, was not in keeping with accepted business practices, and that such conduct also adversely affected the collectability of the . . . Partnership's accounts receivable.

21. The Court further finds that [Defendant], after the date of dissolution did in fact commingle his private proprietorship

accounting business funds with the funds of the . . . Partnership, which, according to [Pulliam], made a valuation of the . . . Partnership very difficult. The Court further finds that [Defendant's] actions in commingling funds and sending confusing bills to the . . . Partnership's clients did adversely affect the collectability of accounts receivable. The Court cannot assign a number figure to that.

. . . .

24. The Court further finds that [Defendant's] representations to [Pulliam] that the . . . Partnership, as of the date of dissolution, had a negative value of $118,000 to be false, disingenuous, and a violation of his fiduciary duty to the . . . Partnership.

. . . .

26. From 1985 until July 9, 1999, the 5th Street [b]uilding continued to be owned by E&L Rentals. On July 9, 1999, [Defendant] and his wife and Jeff Collins and his wife purchased the 5th Street [b]uilding. During the period from May 1, 1996, through July 9, 1999, [Defendant] . . . continued to use the 5th Street [b]uilding for his own accounting practice. Although the . . . Partnership, according to filed tax returns, paid rent of $2,500 per month on the 5th Street [b]uilding, [Defendant] paid rent of only $1,275 per month. The Court finds that [Defendant's] contention that he should not be required to pay rent based on the same rental value as had been claimed by the . . . Partnership for tax purposes is not equitable, and that [Defendant] is estopped from denying that the amount of rent shown by the . . . Partnership in its tax returns ($2,500[] per month) is not the fair rental value of the 5th Street [b]uilding.

27. The difference between the $2,500 per month rental value paid by the . . . Partnership for the 5th Street [b]uilding and the $1,275.00 per month paid by [Defendant] after May 1, 199[6], is $1,225. [Defendant] paid the lesser amount for 33 months, from May 1, 1996 through January 1999. Thus, the total deficiency for this 3[3] month period is $40,425. [Defendant] did not pay any rent on the 5th Street [b]uilding from February 1999 until July 1999. The total deficiency for this period is $15,000.

. . . .

**LEWIS v. EDWARDS**

[147 N.C. App. 39 (2001)]

29. [Defendant] collected $18,000.00 from [the] Partnership client JFJ when approximately that same amount was still owing to the Partnership. [Defendant's] actions were in bad faith and the $18,000.00 should be added to the post-dissolution value of the Partnership, with [Plaintiff] being entitled to one-half (1/2) of that amount.

. . . .

31. The Court finds that [Defendant] continued to use all of the . . . Partnership's assets in the 5th Street [b]uilding. However, [Defendant] did not convert all the assets because [Defendant] did offer [Plaintiff] and indeed requested [Plaintiff] to come to the [P]artnership and help with the winding down of the [P]artnership's affairs.

. . . .

34. [Plaintiff's] contention that he should be reimbursed by the . . . Partnership for storage charges for files and records . . . is a transparent attempt by [Plaintiff] to require [Defendant] to reimburse [Plaintiff] when the money [Plaintiff] actually paid was paid to a corporation of which [Plaintiff] was an officer. . . .

35. The Court finds that the only May 1, 1996 adjustments to be made to [Pulliam's] valuation are the rental amount and the amount collected from JFJ.

Judge Gore concluded: Defendant breached his fiduciary duty and the Partnership duties, but Plaintiff was not entitled to the recovery of damages on these claims; Plaintiff breached the Partnership duties, but Defendant was not entitled to any damages on this claim; Plaintiff breached his fiduciary duty, but Defendant failed to show any compensable damages; and Defendant failed to present any evidence establishing Defendant's entitlement of relief for interference with prospective economic advantage or unjust enrichment.[5] Judge Gore further concluded with respect to Plaintiff's first claim for relief for a judicial accounting pursuant to statute:

A. The value of the . . . Partnership at May 1, 1996 . . . was $176,070.52.

---

5. Defendant did not assign error to Judge Gore's conclusions of law concerning Defendant's failure to present evidence establishing entitlement of relief for interference with prospective economic advantage or unjust enrichment.

B. The value of the . . . Partnership as of the dissolution date should be adjusted upward by $18,000.00, representing the amount of money that [Defendant] collected from JFJ and deposited into his sole proprietorship after May 1, 1996. Thus, the value of the Partnership is $194,070.52 and [Plaintiff] is entitled to one-half (1/2) of that amount from [Defendant], which is $97,035.26. Interest at the rate of eight percent (8%) per annum should be added to that amount from May 1, 1996, the date that [Defendant] took control of the Partnership assets and liabilities, until the date of entry of judgment.

C. [Defendant] is also liable to E&L Rentals in the principal sum of $55,425.00 in rent on the 5th Street [b]uilding, in accordance with the rent of $2,500.00 per month previously paid by the . . . Partnership for rent of the 5th Street [b]uilding according to the . . . Partnership's tax returns.

D. [Defendant] is required to pay [Plaintiff] $27,712.50 for the principal amount of his one-half interest in the principal sum that [Defendant] owes in rent for the 5th Street [b]uilding, plus appropriate interest.

---

The issues are whether: (I) Defendant is entitled to recover damages for Plaintiff's breach of the Partnership duties; (II) the trial court properly calculated the amount of rent Defendant owed to Plaintiff; (III) the trial court properly calculated the amount of payments Defendant received from JFJ; (IV) the trial court erred in awarding pre-judgment interest on the judicial accounting award; and (V) the trial court erred in not considering the parties' adjustments to the value of the Partnership.

"The applicable standard of review on appeal where, as here, the trial court sits without a jury, is whether competent evidence exists to support its findings of fact and whether the conclusions reached were proper in light of the findings." *In re Foreclosure of C and M Inv.*, 123 N.C. App. 52, 54, 472 S.E.2d 341, 342 (1996), *aff'd in part, rev'd in part*, 346 N.C. 127, 484 S.E.2d 546 (1997).

I

[1] Defendant argues Plaintiff breached the Partnership duties by accepting employment with Ted Parker while still a partner with the Partnership and Defendant therefore is entitled to damages. We disagree.

A modification to a contract occurs if there is mutual assent to the terms of the modification and consideration for the contract. *Altman v. Munns*, 82 N.C. App. 102, 105, 345 S.E.2d 419, 422 (1986). The effect of a modification to a contract is the production of a new agreement. *Yamaha Int'l Corp. v. Parks*, 72 N.C. App. 625, 628, 325 S.E.2d 55, 58 (1985).

In this case, the trial court found the Partnership duties were modified by the parties' conduct and concluded Defendant was not entitled to damages for Plaintiff's breach of the Partnership duties. The evidence in the record shows that in December 1995, after the agreement had been entered into, the parties agreed Defendant would be the managing partner of the Partnership and would receive additional compensation as a result of his increased responsibilities. As there was both assent and consideration (the additional compensation to Defendant), the agreement was modified and a new agreement was produced between the parties. At no time did Defendant object to Plaintiff leaving the Partnership to work for Ted Parker nor did Defendant demand Plaintiff's income from Ted Parker "be charged against the pro-rata share of net income," as required by the agreement. In fact, Defendant accepted the additional $2,000.00 per week as contemplated by the parties. Accordingly, as there is competent evidence to support the finding of fact that the Partnership duties were modified and this finding of fact supports the conclusion of law, there is no error in the trial court's conclusion that Defendant was not entitled to damages for Plaintiff's breach of the Partnership duties.

II

[2] Defendant next argues the trial court erred in awarding Plaintiff rent through the entire month of July 1999 because Defendant obtained ownership of the 5th Street building on 9 July 1999. We agree.

In this case, the trial court found Defendant was liable for rent from 1 February 1999 through July 1999, a six month period, for the sum of $15,000.00 and after adding in additional amounts owed, concluded Defendant "is required to pay [Plaintiff] $27,712.50." The evidence, however, does not support the trial court's finding of fact that Defendant was obligated to pay rent for the entire month of July 1999 because the record shows Defendant obtained ownership of the 5th Street building on 9 July 1999. Accordingly, on remand, the trial court's finding of fact and conclusion of law concerning rent on the

5th Street building must be modified to reflect the rent Defendant owes through 9 July 1999.

## III

**[3]** Defendant further argues the trial court erred in finding Defendant collected $18,000.00 from JFJ. We agree.

In this case, the trial court found Defendant collected $18,000.00 from the Partnership client JFJ and concluded the value of the Partnership should be adjusted to include payments from JFJ. The evidence, however, does not support the trial court's finding of fact that Defendant received $18,000.00 from JFJ; indeed, Plaintiff's exhibit 66 shows Defendant only received approximately $13,317.65 from JFJ. Accordingly, the trial court's finding of fact and conclusion of law concerning money collected from JFJ should be adjusted on remand to conform to the evidence.

## IV

**[4]** Defendant next argues the trial court erred in awarding Plaintiff interest on the judicial accounting award from 1 May 1996, the date the Partnership dissolved and Defendant took control of the assets and liabilities of the Partnership. We disagree.

Generally, all portions of a money judgment, other than in an action for contract and those designated by the fact finder as compensatory damages, "bear[] interest from the date of entry of judgment until the judgment is satisfied." N.C.G.S. § 24-5(b) (Supp. 2000). North Carolina General Statutes § 59-72, however, provides that a retiring partner has the right to receive the value of his interest in the partnership, with interest from the date of dissolution, if the partnership business is continued as set forth in N.C. Gen. Stat. § 59-71, subsections (a), (b), (c), (e), or (f). N.C.G.S. § 59-72 (1999). The partnership business is continued under section 59-71(c) if the partnership is dissolved and the business is continued without liquidation of the partnership affairs. N.C.G.S. § 59-71(c) (1999).

The applicable rule of statutory construction here is that "where one statute deals with a particular subject or situation in specific detail, while another statute deals with the subject in broad, general terms, the particular, specific statute will be construed as controlling, absent a clear legislative intent to the contrary." *Nucor Corp. v. General Bearing Corp.*, 333 N.C. 148, 154-55, 423 S.E.2d 747, 751 (1992). Therefore, section 59-72, which specifically deals with inter-

est on an award for judicial accounting, controls over the general statute dealing with interest on judgments. In this case, the business of the Partnership was continued by Defendant without liquidation of the Partnership affairs; thus, Plaintiff was entitled to receive interest on the value of his interest in the Partnership from the date of dissolution. Accordingly, the trial court did not err in awarding Plaintiff interest on the judicial accounting award from 1 May 1996.

V

[5] Defendant's final argument is that the trial court erred in not considering the parties' adjustments to the final valuation. We agree.

In this case, we are unable to determine from Judge Gore's order whether he considered the parties' recommended adjustments to each partner's share of the value of the Partnership. Although Judge Gore found "that the only May 1, 1996 adjustments to be made to [Pulliam's] valuation are the rental amount and the amount collected from JFJ," these adjustments went to the overall value of the Partnership and not to the partner's individual interest in the Partnership. Accordingly, this case must be remanded for consideration of each party's proposed adjustments so as to conform to Judge Floyd's order that each party have the right to "prove that he has paid from his individual funds partnership liabilities existing at May 1, 1996, or that the [P]artnership has, since May 1, 1996, paid for the benefit of either party any amount that was not a liability of the Partnership . . . or that any other adjustments are appropriate." *See Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982) (proper findings of fact require a specific statement of the facts on which the parties' rights are to be determined "established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached").

[6] In his brief to this Court, Plaintiff cross-assigns error to the trial court's failure to award Plaintiff damages for Defendant's breach of the Partnership duties and breach of fiduciary duty. Plaintiff's arguments concerning its cross-assignments of error are reasons the trial court erred in its findings of fact and conclusions of law and those reasons do not provide "an alternative basis in law for supporting" the judgment as Plaintiff contends. The proper method to raise these arguments would have been by a cross-appeal. *See Williams v. N.C. Dept. of Economic and Community Development*, 119 N.C. App. 535, 539, 458 S.E.2d 750, 753 (1995); *see also* N.C.R. App. P. 10(d).

Accordingly, Plaintiff's failure to appeal the trial court's order waives this Court's consideration of the matter on appeal. *Id.*

Affirmed in part, reversed in part, and remanded.[6]

Judges CAMPBELL and SMITH concur.

---

6. Defendant also assigns error to the trial court's failure to award damages for Plaintiff's breach of fiduciary duty. Defendant's brief to this Court, however, cites no authority in support of his position. Accordingly, we do not address this assignment of error. *See* N.C.R. App. P. 28(b)(5).